J-A24010-22

2023 PA Super 13

| | | |
|---|---|---|
| JASON YODER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MCCARTHY CONSTRUCTION, INC.; | : | |
| CASTELLI MECHANICAL DESIGN AND | : | |
| CATANIA ENGINEERING | : | No. 1605 EDA 2021 |
| ASSOCIATES, INC. | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| AIR CONTROL TECHNOLOGY, INC.; | : | |
| AND RRR CONTRACTORS, INC. | : | |

Appeal from the Judgment Entered July 22, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  180500769

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and SULLIVAN, J.

OPINION BY BENDER, P.J.E.:                    **FILED JANUARY 31, 2023**

Appellant, McCarthy Construction, Inc. ("McCarthy"), appeals from the

$5,590,650.69 judgment entered in favor of Appellee, Jason Yoder, and

against McCarthy following a jury trial.[1,2]  In its appeal, McCarthy asks us, *inter alia*, to determine whether it qualifies as Mr. Yoder's statutory employer under the Workers' Compensation Act ("WCA")[3], such that it is immune from suit.

Pertinent to our review, under Section 302(b) of the WCA, 77 P.S. § 462, general contractors take on secondary liability for the payment of workers' compensation benefits to the injured employees of their subcontractors.  **See Patton v. Worthington Associates, Inc.**, 89 A.3d 643, 645 (Pa. 2014).[4]  Thus, if the subcontractor-employers default, these general

---

[1] McCarthy purports to appeal from "the [j]udgment entered on July 22, 2021; the [o]rder dated July 22, 2021, which denied and struck [McCarthy's] Motion to Vacate or Alternatively, Motion for Reconsideration; the 'Correction to Judgment Index' dated July 26, 2021; and all prior adverse orders and rulings."  McCarthy's Notice of Appeal, 8/9/21, at 1.  An appeal, however, properly lies from judgment.  **See Johnston the Florist, Inc. v. TEDCO Const. Corp.**, 657 A.2d 511, 514 (Pa. Super. 1995) (*en banc*) (stating that "an appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of any post-verdict motions") (citation omitted); **see also Bollard & Associates, Inc. v. H&R Industries, Inc.**, 161 A.3d 254, 256 (Pa. Super. 2017) ("An order denying reconsideration is unreviewable on appeal.") (citations omitted); **Rohm and Haas Co. v. Lin**, 992 A.2d 132, 149 (Pa. Super. 2010) ("Once an appeal is filed from a final order, all prior interlocutory orders become reviewable.") (citation omitted). We have amended the caption accordingly.

[2] The other parties listed in the caption are no longer involved in the case. **See** McCarthy's Brief at 12.

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041; 2501-2710.

[4] **See** 77 P.S. § 462 ("Any employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an
*(Footnote Continued Next Page)*

contractors must pay workers' compensation benefits to the subcontractor-employees. **See id.** As such, although they are not the actual employers of the subcontractor-employees, general contractors are considered "statutory employers" of the subcontractor-employees due to their treatment under the WCA. **See id.**[5] Our legislature's "purpose in imposing this status upon general contractors was remedial, as it wished to ensure payment of workers' compensation benefits in the event of defaults by primarily liable subcontractors." **Id.** (citation and footnote omitted).

In exchange for assuming secondary liability for the payment of workers' compensation benefits, statutory employers under Section 302(b) have immunity in tort for work-related injuries sustained by subcontractor-employees. **See id.**[6] To establish this statutory-employer relationship so that

_____

employe or contractor, for the performance upon such premises of a part of such employer's regular business entrusted to that employe or contractor, shall be liable for the payment of compensation to such laborer or assistant unless such hiring employe or contractor, if primarily liable for the payment of such compensation, has secured the payment thereof as provided for in this act. Any employer or his insurer who shall become liable hereunder for such compensation may recover the amount thereof paid and any necessary expenses from another person if the latter is primarily liable therefor.") ("Section 302(b)").

[5] Statutory-employer status is also imposed under Section 302(a), codified at 77 P.S. § 461, of the WCA. **See Patton**, 89 A.3d at 645 n.3. However, Section 302(a) is not at issue in this matter.

[6] **See** 77 P.S. § 52 ("An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall
*(Footnote Continued Next Page)*

the statutory employer is immune from a suit for negligence, our Supreme Court has held that the following five elements must be present:

> (1) An employer who is under contract with an owner or one in the position of an owner[;] (2) Premises occupied by or under the control of such employer[;] (3) A subcontract made by such employer[;] (4) Part of the employer's regular business [e]ntrusted to such subcontractor[;] (5) An employee of such subcontractor.

***McDonald v. Levinson Steel Co.***, 153 A. 424, 426 (Pa. 1930). If these elements are met, statutory employers enjoy immunity "by virtue of statutory-employer status alone, such that it is accorded even where the statutory employer has not been required to make any actual benefit payment." ***See Patton***, 89 A.3d at 645 (citing ***Fonner v. Shandon, Inc.***, 724 A.2d 903, 907 (Pa. 1999)) (footnote omitted).

For the following reasons, we determine that McCarthy qualifies as Mr. Yoder's statutory employer under the five-part ***McDonald*** test and is therefore entitled to tort immunity. Accordingly, we are compelled to reverse the judgment entered in favor of Mr. Yoder and remand for the entry of judgment in favor of McCarthy.

## Facts

The Norwood Public Library entered into a contract with McCarthy — a carpentry company — to remove and replace the library's roof, in addition to

---

be liable to such laborer or assistant in the same manner and to the same extent as to his own employe.") ("Section 203"); ***see also*** 77 P.S. § 481(a) (stating that the liability of an employer under the WCA shall be exclusive and in place of any and all other liability) ("Section 303").

completing other projects at the library. *See* Trial Court Opinion ("TCO"), 2/11/22, at 1. McCarthy, in turn, subcontracted with roofing company, RRR Contractors, Inc. ("RRR"), for part of the roofing work. *Id.* Mr. Yoder worked for RRR. *Id.* On October 25, 2016, Mr. Yoder sustained critical injuries after he fell through an uncovered hole in the roof of the library while working there as a roofer. *Id.*

With respect to the events leading up to the unfortunate accident and Mr. Yoder's resulting injuries, the trial court recounted:

> In accordance with [Occupational Safety and Health Administration ("OSHA")] safety procedures required of the general or prime contractor on the jobsite, McCarthy … had the nondelegable duty to provide a safe work site under [OSHA] requirements. McCarthy … admitted that it was [its] responsibility to patch the hole in the roof in "tongue and groove" style[,] as this is an established specialty for carpenters, not roofers, and RRR did not have the skill to have filled in the hole. Pursuant to OSHA standards, any adequate hole cover needed to be capable of sustaining twice the weight of any individual worker, equipment and tools which would be imposed on it at any time or that any cover be secured against accidental movement by a worker or the elements moving it out of the way.
>
> On the date of the accident, Mr. Yoder climbed a ladder to access the roof and saw an OSHA[-]mandated red-flag perimeter set up around the roof[,] signifying that the workplace was safe and secure according to OSHA guidelines. Mr. Yoder began working independently by ripping off the roof as other workers collected the material. The foreman of the job, Dave Adams[ of RRR], asked him to deliver foam board insulation to anyone working on the roof that needed it. Mr. Yoder tucked the 4x8 foot rectangular boards underneath his arm and began walking toward the people who needed the board. As he was walking, Mr. Yoder fell through an unmarked and uncovered hole in the roof.
>
> Mr. Yoder was rushed to a Trauma II [C]enter (for the most severe injuries that are not life threatening) by ambulance where he was intravenously administered fentanyl and dilaudid for his agonizing

and severe pain. On November 4, 2016, he was transferred to inpatient rehabilitation at a [L]evel I Trauma Center where he continued to receive potent analgesics intravenously during treatment for his injuries.

From falling through an uncovered hole on the roof and hitting the ground on his back twenty feet below him, Mr. Yoder suffered severe and permanent disabling injuries including: a burst fracture of his T12 vertebrae, a right transverse L4 vertebrae process fracture, pubic fractures, a fractured sacrum, aggravation of left hip degenerative changes, T7-T8 disc protrusion and degenerative disc disease with aggravation, radial tears of the annulus at T9-T10 and T10-T11, lumbar radiculopathy, left lower extremity, chronic pain syndrome, spondylosis with myopathy, sacroiliitis[,] and post-traumatic arthritis. Mr. Yoder will require pain management for the rest of his life because of his progressively debilitating injuries.

*Id.* at 1-3 (internal citations omitted).

## Procedural History

On May 10, 2018, Mr. Yoder filed a complaint against McCarthy, along with other parties no longer in the case, contending McCarthy was negligent.[7] McCarthy filed an answer, affirmative defenses, and a cross-claim, in which it raised that Mr. Yoder's "claims are barred or limited by the exclusivity provisions of the Pennsylvania Workers['] Compensation Law." Answer, 8/20/18, at 7 ¶ 4 (unpaginated).

Subsequently, on September 20, 2018, Mr. Yoder filed an amended complaint. On January 28, 2020, McCarthy filed a motion for summary judgment, claiming that it was Mr. Yoder's statutory employer and immune from suit. The next week, on February 6, 2020, McCarthy filed an answer

_____

[7] The record in this case is voluminous. Therefore, in our recitation of this case's procedural history, we focus on the events most relevant to this appeal and omit many other matters from our discussion.

with new matter and new matter cross-claims to Mr. Yoder's amended complaint, wherein it represented that it "asserts all of the defenses available to it under the Pennsylvania Worker[s'] Compensation Act and avers that [Mr. Yoder's] remedies are limited exclusively thereto and the present action is barred." Answer, 2/6/20, at ¶ 73.

On February 25, 2020, Mr. Yoder filed a motion to strike McCarthy's answer and new matter as untimely, given that it was filed over 16 months after the filing of Mr. Yoder's amended complaint. Shortly thereafter, on February 27, 2020, Mr. Yoder filed a response to McCarthy's motion for summary judgment, arguing, among other things, that genuine issues of material fact exist.

On April 22, 2020, the trial court denied McCarthy's motion for summary judgment without providing any explanation for doing so.[8] Later, on June 22, 2020, the trial court granted Mr. Yoder's motion to strike McCarthy's answer to the amended complaint and new matter.[9]

Leading up to trial, the parties filed forty motions *in limine*. **See** N.T., 6/7/21, at 21. Of note, in one such motion, McCarthy sought to preclude evidence on liability based on the statutory-employer defense. In another motion, Mr. Yoder sought to preclude McCarthy from raising the statutory-employer defense at trial, or submitting any questions regarding the defense

---

[8] This motion was denied by the Honorable Daniel J. Anders.

[9] This motion was granted by the Honorable Denis P. Cohen.

to the jury, because McCarthy had purportedly waived the defense by failing to plead it.

The case proceeded to a jury trial.[10] After the jury was selected, on June 7, 2021, the trial court heard oral argument on some of the parties' motions *in limine*. There, the trial court determined that, although the statutory-employer defense is not waivable, McCarthy failed to "meet any of the prongs of the test to establish that [it] was the statutory employer of Mr. Yoder…." N.T., 6/7/21, at 155. Accordingly, the trial court subsequently issued an order denying McCarthy's motion *in limine* to preclude evidence on liability based on the statutory-employer defense, stating that McCarthy fails to meet the requirements to qualify as a statutory employer and therefore cannot take advantage of the defense. In addition, the trial court granted Mr. Yoder's motion *in limine* to preclude the statutory-employer defense, directing that McCarthy "shall be precluded from raising the statutory[-employer] defense at trial in any manner whatsoever, including preclusion from submitting any questions to the jury concerning the statutory[-]employer defense, as … McCarthy … does not meet the requirements…." Order, 6/8/21, at 1 (unpaginated; single page).

Following Mr. Yoder's case-in-chief, McCarthy moved for a nonsuit based on, *inter alia*, statutory-employer immunity, which the trial court denied. N.T., 6/17/21, at 5-8. Later, after McCarthy had presented its case, McCarthy

_____

[10] The Honorable Angelo Foglietta presided over the trial.

similarly moved for a directed verdict based on statutory-employee immunity, which the trial court again denied. N.T., 6/22/21 (A.M.), at 76-79. Thereafter, the trial court likewise denied McCarthy's request to charge the jury on the statutory-employer defense. N.T., 6/22/21 (P.M.), at 14.

On June 22, 2021, the jury returned a unanimous verdict in favor of Mr. Yoder in the amount of $5,000,000. N.T., 6/22/21 (P.M.), at 158-60. In reaching this result, the jury determined that McCarthy was negligent, McCarthy's negligence was a factual cause of Mr. Yoder's injuries, and that Mr. Yoder was not comparatively negligent. *Id.* at 158.

Following trial, Mr. Yoder filed a motion for delay damages, which McCarthy opposed. Additionally, McCarthy filed a post-trial motion requesting, *inter alia*, judgment notwithstanding the verdict ("JNOV") or a new trial based on statutory-employer immunity. Mr. Yoder filed a response in opposition.

The trial court denied McCarthy's post-trial motion in its entirety on July 14, 2021. On July 16, 2021, McCarthy filed a motion to vacate the trial court's July 14, 2021 order denying its post-trial motion without briefing, or in the alternative, for reconsideration of the trial court's denial of statutory-employer immunity. Mr. Yoder responded in opposition, urging the trial court to strike McCarthy's July 16, 2021 motion as McCarthy was purportedly using it as a vehicle to improperly supplement the evidentiary record and engage in post-trial briefing. On July 22, 2021, the trial court denied and struck McCarthy's July 16, 2021 motion. That same day, the trial court also issued an order

granting Mr. Yoder delay damages in the amount of $590,650.69. Judgment was entered in favor of Mr. Yoder in the amount of $5,590,650.69, on July 22, 2021.

McCarthy subsequently filed a timely notice of appeal. Both the trial court and McCarthy complied with Pa.R.A.P. 1925(b). In its Rule 1925(a) opinion, the trial court proffered the following explanation as to why it ascertained as a matter of law that McCarthy was not entitled to statutory-employer immunity:

> McCarthy … did not and cannot succeed with the non-waivable statutory employer defense because [it] fail[s] to meet the fifth prong of the test established in **McDonald**…, which is utilized to determine whether an organization is a statutory employer.
>
> Before an employer will be considered a statutory employer for purposes of the statutory[-]employer immunity defense under the [WCA], the following five elements must be present: (1) an employer who is under contract with an owner or one in the position of an owner; (2) premises occupied by or under the control of such employer; (3) a subcontract made by such employer; (4) part of the employer's regular business entrusted to such subcontractor; and (5) [the plaintiff is] an employee of such subcontractor.
>
> Because an independent contractor can never be a statutory employee, the elements of the **McDonald** test governing the determination of whether an employer is a statutory employer within the meaning of the [WCA] cannot be met where a contractor is an independent contractor. Pennsylvania does not have an established rule to determine whether a particular … working relationship can be classified as employer-employee or owner-independent contractor but instead promulgates certain guidelines or factors. The factors which are considered, none being dispositive, include the following:
>
>> (1) control of manner in which the work is done; (2) responsibility for result only; (3) terms of agreement between the parties; (4) nature of the work/occupation; (5)

- 10 -

skill required for performance; (6) whether one is engaged in a distinct occupation or business; (7) which party supplies the tools/equipment; (8) whether payment is by time or by the job; (9) whether work is part of the regular business of employer; and, (10) the right to terminate employment.

Here, [Mr.] Yoder was properly found to be an independent contractor of RRR….  Mr. Yoder testified that he understood his agreement with RRR … to be that of an independent contractor. He testified that he was doing "service work" for RRR…[,] which entailed going to job sites himself, using his own tools, and controlling his own time on the job.  Remarkably, [McCarthy] proffers no evidence to support [Mr.] Yoder's status as an employee of RRR….  In fact, throughout this litigation, McCarthy … relied on Mr. Yoder's IRS 1099 form to show the amount of money that he was entitled to recover based upon his yearly earnings.  While tax forms are not dispositive of independent contractor status, McCarthy['s] use of Mr. Yoder's independent contractor tax forms to show how much money he earned is inapposite and unconvincing of their own point that Mr. Yoder was an *employee* of RRR … in light of the other circumstances in this case and lack of evidence that Mr. Yoder was in fact an employee of RRR….  Thus, this [c]ourt concluded that [Mr.] Yoder was an independent contractor of RRR … and not an employee.

TCO at 4-6 (citations and footnotes omitted; emphasis in original).  In addition, for the same reasons, the trial court determined that it did not err or abuse its discretion in denying McCarthy's motion for a new trial based on the preclusion of evidence, jury interrogatories, and jury instructions regarding the statutory-employer defense. *Id.* at 6.

## Issues

Presently, on appeal, McCarthy raises the following issues for our review:

1. Whether [JNOV] is required because [McCarthy] is clearly entitled to statutory[-]employer immunity?

2. Whether, in the alternative, this Court should order a new trial at which statutory[-]employer immunity will be litigated?

- 11 -

3. Whether a new trial is required because the trial court erroneously precluded highly relevant video surveillance?

4. Whether a remand is required to recalculate delay damages because the trial court erred in awarding such damages for the period of Pennsylvania's Covid-related judicial emergency?

McCarthy's Brief at 9.[11]

### First Issue

In McCarthy's first issue, it asserts that JNOV is required because it is clearly entitled to statutory-employer immunity. *Id.* at 20. We recognize:

> There are two bases upon which a JNOV can be entered: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

> When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict…. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact…. A JNOV should be entered only in a clear case.

---

[11] In addition to the briefs of McCarthy and Mr. Yoder, the Pennsylvania Association for Justice filed an *amicus curiae* brief on behalf of Mr. Yoder, and the Pennsylvania Defense Institute and the Philadelphia Association of Defense Counsel filed an *amici curiae* brief in support of McCarthy.

***Sheard v. J.J. DeLuca Co., Inc.***, 92 A.3d 68, 74 (Pa. Super. 2014) (cleaned up).[12]  Further, "[a]s a general rule, absent any concession, the status of an individual (*e.g.*[,] 'general contractor,' 'independent contractor,' 'subcontractor') presents a question of law." ***Id.*** at 75 (citation omitted).

<u>Waiver</u>

Before delving into our review of whether McCarthy qualifies as a statutory employer under the ***McDonald*** test and is entitled to judgment as a matter of law, we initially observe that McCarthy's failure to timely plead the statutory-employer defense in response to Mr. Yoder's amended complaint does not result in waiver.  This Court has previously explained:

> [T]he [WCA] deprives the common pleas courts of jurisdiction of common law actions in tort for negligence against employers and is not an affirmative defense which may be waived if not timely pled.  The lack of jurisdiction of the subject matter may be raised at any time and may be raised by the court *sua sponte* if necessary.  To the extent that prior appellate decisions have held to the contrary, they are expressly overruled.
>
> ***LeFlar v. Gulf Creek Indus. Park No. 2***, … 515 A.2d 875, 879 ([Pa.] 1986) (internal citation omitted).  ***See also Shamis v. Moon***, 81 A.3d 962, 970 (Pa. Super. 2013).
>
> "Subject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented.  Jurisdiction is a matter of substantive law." ***Midwest Financial Acceptance Corp. v. Lopez***, 78 A.3d 614, 627 (Pa. Super. 2013) (citation

---

[12] Notably, where it has been determined after trial that statutory-employer immunity applies, this Court has entered JNOV in favor of the statutory employer.  ***See Sheard***, 92 A.3d at 79 (concluding that the defendant was entitled to JNOV by way of statutory-employer immunity); ***see also Patton***, 89 A.3d at 650 (remanding the matter "for any further actions as may be necessary to conclude it").

- 13 -

omitted). "By jurisdiction over the subject-matter is meant the nature of the cause of action and of the relief sought; and this is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in authority specially conferred." *Mid–City Bank & Trust Co. v. Myers*, … 23 A.2d 420, 423 ([Pa.] 1942) (citing *Cooper v. Reynolds*, 77 U.S. 308 … (1870)).

Our Supreme Court extended *LeFlar* to allow the initial assertion of sovereign immunity, even in a petition for reargument following the Supreme Court's adjudication of an appeal to that Court. *See Tulewicz v. Southeastern Pennsylvania Transp. Authority*, … 592–94, 606 A.2d 427, 428–29 ([Pa.] 1992) (citing *LeFlar*, *supra*; *In re Upset Sale*, … 560 A.2d 1388 ([Pa.] 1989)). Nevertheless, "non-waivable" issues must still be raised within the scope of the proceedings. *See Bell v. Kater*, 943 A.2d 293 (Pa. Super. 2008), *appeal denied*, … 960 A.2d 454 ([Pa.] 2008) (finding waiver of co-employee workers' compensation immunity, when it was first asserted eleven months following denial of petition for Supreme Court review, because it was no longer timely); *City of Philadelphia Police Dept. v. Civil Service Com'n of City of Philadelphia*, 702 A.2d 878, 880 n.3 (Pa. Cmwlth. 1997) (finding waiver of governmental immunity when first raised after conclusion of proceedings, to frustrate collection of final judgment).

Once the litigation and all appellate avenues are exhausted, the court is no longer competent to address what was otherwise non-waivable immunity. *Bell*, *supra*. As long as the proceedings continue, however, even throughout the appellate process, the relevant court may consider a claim of statutory employer immunity in the first instance. *Tulewicz*, *supra*.

*Sheard*, 92 A.3d at 75-76.[13]

_____

[13] *See also Shamis*, 81 A.3d at 970 ("[T]he [WCA] deprives the common pleas courts of jurisdiction of common law actions in tort for negligence against employers. Thus, it could be argued that — even on appeal — this Court has the obligation to *sua sponte* raise the statutory[-]employer defense, craft an argument in favor of or against its applicability, and resolve the issue — all without briefing or argument by the parties and all without a focused, structured presentation before the trial court.") (cleaned up); *see also*
*(Footnote Continued Next Page)*

- 14 -

To illustrate, in **Sheard**, the defendant pled statutory-employer immunity under the WCA in its new matter. **Id.** at 71, 78. In the plaintiff's reply, the plaintiff generally denied that assertion, without any further elaboration. **Id.** The case proceeded to a jury trial, where the jury rendered a verdict in favor of the plaintiff. **Id.** Neither the plaintiff nor the defendant raised the issue of statutory-employer immunity at trial. **Id.** at 78. Following trial, the defendant filed a timely post-trial motion, in which it raised various issues unrelated to statutory-employer immunity, and reserved the right to supplement the post-trial motion upon receipt of the notes of testimony from trial. **Id.** at 71. Thereafter, the defendant moved to amend its post-trial motion to request JNOV based on statutory-employer immunity, which the plaintiff opposed. **Id.** at 71-72. Upon review, the trial court denied the defendant's request for JNOV based on statutory-employer immunity, determining that the defendant waived the issue by failing to have presented evidence on it at trial. **Id.** at 72, 78.

On appeal, this Court ascertained that the defendant had not waived the issue. Relying on **LeFlar**, **supra**, we reasoned that the defendant's assertion of statutory-employer immunity "implicated the trial court's competency to hear and decide this action. Owing to its foundational nature, plus the fact that the proceedings were still open, we conclude [the defendant] did not

---

**Grimm v. Grimm**, 149 A.3d 77, 86 (Pa. Super. 2016) (noting that "a party cannot waive an issue relating to the trial court's lack of subject matter jurisdiction").

waive the issue of immunity." ***Id.*** at 78 (citations omitted). In addition, we noted that "both parties fully briefed the issue in post-trial motions and were given the opportunity to conduct oral argument on the issue. Whether the immunity issue was presented to a jury is irrelevant, because statutory[-]employer immunity, interpretation of contracts, or vertical privity of the individuals and entities, are all questions of law." ***Id.*** (citation omitted). From there, upon applying the relevant law and looking at the entire record (including averments made in the plaintiff's complaint, as well as a subcontract attached as an exhibit to the defendant's amended post-trial motion), we discerned that the defendant was entitled to JNOV by way of statutory-employer immunity, due to its status as a general contractor and the plaintiff's status as a subcontractor's employee. ***Id.*** at 78-79.

In sum, ***Sheard*** demonstrates that statutory-employer immunity may be raised at any time so long as the proceedings are still open. Thus, in the case *sub judice*, McCarthy's failure to timely plead the statutory-employer defense in response to Mr. Yoder's amended complaint is inapposite. McCarthy has not waived the defense.[14]

<u>Scope of Review</u>

---

[14] Mr. Yoder argues that our Supreme Court should overturn ***LeFlar*** "to the extent that ***LeFlar*** has been applied to make the statutory[-]employer defense non-waivable even where the supposed statutory employer was not called on to pay any worker[s'] compensation benefits." Mr. Yoder's Brief at 56. If and until that happens though, we are, of course, "duty-bound to effectuate [our Supreme Court's] decisional law." ***Walnut Street Associates, Inc. v. Brokerage Concepts, Inc.***, 20 A.3d 468, 480 (Pa. 2011) (citations omitted).

Next, we note that our review of McCarthy's first issue is not confined to only the jury trial record, but instead includes the pre- and post-trial record, too. **See Sheard**, 92 A.3d at 78, 78 n.3 (considering averments made in the plaintiff's complaint, as well as a subcontract attached as an exhibit to the defendant's amended post-trial motion, in determining that JNOV should be entered in favor of the defendant on the basis of statutory-employer immunity). We further agree with McCarthy that, if our review was confined to only the jury trial record, it "would essentially preclude appellate review of [McCarthy's] entire claim because the pre[-]trial record would be irrelevant and the [jury] trial record could not, by court order, contain more detailed evidence regarding the defense" due to the trial court's order granting Mr. Yoder's motion *in limine*. McCarthy's Reply Brief at 13; **see also id.** at 16 (noting that McCarthy "had no obligation or ability to formally move [relevant] documents into the trial record after the [c]ourt strictly prohibited the statutory[-]employer defense and any related jury fact-finding").[15] Thus, we look at the entire record in assessing McCarthy's first issue.

_____

[15] We also agree with McCarthy's distinguishment of **Xtreme Caged Combat v. Zarro**, 247 A.3d 42 (Pa. Super. 2021), and **Whitaker v. Frankford Hosp. of City of Philadelphia**, 984 A.2d 512 (Pa. Super. 2009), which Mr. Yoder relies upon to support his position that only the jury trial record should be considered. McCarthy explains:

> [Mr. Yoder] maintains that, "[o]nce this case proceeded to trial and [McCarthy] presented a defense, the trial court's refusal to grant [it] summary judgment and a compulsory nonsuit became moot." [Mr. Yoder's Brief at 25-26 (citing **Xtreme Caged Combat**, **supra**, and **Whitaker**, **supra**)]. Based on this

*(Footnote Continued Next Page)*

## *McDonald* Test

With those preliminary matters out of the way, we now proceed to assessing whether McCarthy satisfies the **McDonald** test.  Because the trial

---

> principle, [Mr. Yoder] argues that "the record that McCarthy created at trial lacks the evidence on which McCarthy bases its entitlement to [JNOV] in reliance on the statutory[-]employer defense." **Id.**[ at] 26-27.
>
> As **Whitaker** and **Xtreme Caged Combat** make clear, where summary judgment is denied and **the same claim** then proceeds to trial, post-trial and appellate review must focus on whether [JNOV] is required, not on whether summary judgment or nonsuit were improperly denied.  **Whitaker**, 984 A.2d at 517 (explaining that [the] defendant sought but was denied summary judgment on whether [the] plaintiff "failed to establish that their conduct caused Ms. Monaghan's injuries" and that claim proceeded to trial, with the result that [the] defendant was found liable); **Xtreme Caged Combat**, 247 A.3d at 50-51 & n.7 (explaining that summary judgment is moot because "the factual record at trial supersedes the denial of summary judgment").  In such cases, where **the same claim** on which summary judgment was denied then proceeds to trial, it makes sense that the subsequent trial record supplants the pre[-]trial record.
>
> This principle has no application to this case, however, because the trial court denied summary judgment on the statutory[-]employer defense — which should have meant only that the defense must proceed to trial — but then inexplicably prohibited [McCarthy] "from raising the statutory[-employer] defense at trial **in any manner whatsoever**, including preclusion from submitting any questions to the jury concerning the statutory[-]employer defense."  The court also specifically denied defense counsel's alternative request for the presentation of evidence and jury fact-finding on the **McDonald** test….

McCarthy's Reply Brief at 9-11 (some citations omitted; emphasis in original).  Because the trial court did not permit McCarthy to raise the statutory-employer defense at trial, we are persuaded by McCarthy's argument that this Court's rulings in **Whitaker** and **Xtreme Caged Combat** do not apply to this matter and do not require us to consider only the jury trial record.

court focused upon McCarthy's failure to satisfy the fifth **McDonald** element — *i.e.*, that Mr. Yoder was an employee of RRR — in its Rule 1925(a) opinion, we begin our assessment by evaluating that element.

*Fifth **McDonald** Element*

With respect to the fifth **McDonald** element, McCarthy argues that Mr. Yoder was not an independent contractor of subcontractor, RRR, but instead an employee of RRR. **See McDonald**, 153 A. at 426 (setting forth that the injured worker must be the employee of a subcontractor). Significantly, to support that Mr. Yoder was an employee of RRR, McCarthy points out that Mr. Yoder sought and obtained workers' compensation benefits from RRR, with his claim resolved in a "Compromise and Release Agreement by Stipulation Pursuant to Section 449 of the [WCA,]" dated October 10, 2017. McCarthy's Brief at 24-25 (citation omitted); **see also** RRR's Answer, New Matter, and New Matter Cross-Claim to McCarthy's Joinder Complaint, 1/13/20, at Exhibit B ("Compromise and Release Agreement").[16] McCarthy notes that the

---

[16] Section 449 of the WCA, codified at 77 P.S. § 1000.5, contemplates, *inter alia*, that the employer or insurer submit the proposed compromise and release by stipulation to the workers' compensation judge for approval. Here, in the Compromise and Release Agreement, the workers' compensation judge is asked to approve the settlement. **See** Compromise and Release Agreement at 3 (misnumbered pages). Further, in RRR's answer, new matter and new matter cross-claim to McCarthy's joinder complaint, RRR alleged that Mr. Yoder "executed, filed with [the Pennsylvania Department of Labor and Industry, Bureau of Workers' Compensation ('Bureau')], and received the Bureau's approval of[] a Compromise and Release Agreement … wherein … he agreed to accept the sum of $262,500.00…." RRR's Answer, New Matter, and New Matter Cross-Claim to McCarthy's Joinder Complaint at 6 ¶ 6 (citing, *(Footnote Continued Next Page)*

Compromise and Release Agreement "identified [Mr. Yoder] as the 'employee' and RRR … as the 'employer,' and fully resolved [Mr. Yoder's] claim for $262,500." McCarthy's Brief at 25 (citation omitted). McCarthy also advances that, as part of the Compromise and Release Agreement, Mr. Yoder formally resigned his employment with RRR. *Id.*[17] In addition, we observe that Mr. Yoder was represented by counsel when entering into the Compromise and Release Agreement and submitting his resignation.

_____

among other things, the Compromise and Release Agreement). In Mr. Yoder's reply to this allegation, he responded, *verbatim*: "Denied as the exhibits as writings speak for themselves. By way of further response, the cited documents have no bearing on whether or not RRR waived the [i]mmunity [d]efense." Mr. Yoder's Reply to RRR's New Matter to McCarthy's Joinder Complaint, 1/22/20, at 3 ¶¶ 5-8. Thus, Mr. Yoder did not specifically dispute that the Compromise and Release Agreement received approval.

[17] Specifically, the resignation signed by Mr. Yoder stated:

> I, JASON YODER, … do hereby tender my resignation **as an employee of RRR**…, and any and all affiliates and subsidiaries thereof, effective immediately. I hereby acknowledge that I am represented by counsel, and that this resignation is voluntary, tendered of my own free will, and not for reasons of a necessitous and compelling nature. By this resignation, I hereby forever waive and relinquish any and all rights to assert any claim or demand for re-employment, seniority, unemployment compensation, benefits, tenure, and all rights to assert any claim to any benefits of employment with RRR…, and any and all affiliates and subsidiaries thereof, with the sole exception of any benefits which have already vested as of the date of this resignation, such as pension or retirement benefits.

**See** RRR Contractor's Answer, New Matter, and New Matter Cross-Claim to McCarthy's Joinder Complaint at Exhibit C (capitalization in original; emphasis added).

McCarthy contends that Mr. Yoder's "demand for and receipt of workers' compensation benefits conclusively established that he was an employee — not an independent contractor — of RRR … because 'an independent contractor is not entitled to [such] benefits because of the absence of a master/servant relationship.'" *Id.* at 25-26 (quoting *Universal Am-Can, Ltd. v. W.C.A.B. (Minteer)*, 762 A.2d 328, 330 (Pa. 2000); original brackets omitted; brackets added). McCarthy says that, because Mr. Yoder demanded and received benefits as an employee, he is judicially estopped from now claiming that he was not an employee of RRR. *Id.* at 26.

In response, Mr. Yoder does not deny that he received workers' compensation benefits from RRR, nor does he argue that judicial estoppel would not apply if we were to consider the documents.[18] Instead, he argues that McCarthy "failed to make the [Compromise and Release A]greement and resignation part of the jury trial record of this case[,]" and did not preserve an argument that taking judicial notice of those documents would be proper. Mr. Yoder's Brief at 44 (emphasis omitted); *see also id.* at 45.

We reject this argument by Mr. Yoder. For the reasons set forth *supra*, we have already determined that our scope of review is not limited to the jury

---

[18] We note that, at Mr. Yoder's deposition, he acknowledged that he made a claim for workers' compensation for this accident, that the claim was resolved and settled, that he received a final, lump-sum payment, and that he was living off of the proceeds from that settlement. *See* McCarthy's Motion for Summary Judgment, 1/28/20, at Exhibit B (Dep. of Mr. Yoder) at 188-93, 199. Further, when arguing the motions *in limine* at trial, McCarthy's counsel pointed out that Mr. Yoder had received workers' compensation benefits from RRR, and Mr. Yoder did not dispute that claim. N.T., 6/7/21, at 141-42.

trial record and, consequently, we have no need to take judicial notice of the Compromise and Release Agreement and resignation, as they are part of the record.

Further, upon considering these documents, we agree with McCarthy that judicial estoppel applies. Our Supreme Court has explained that:

> "As a general rule, a party to an action is estopped from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained." *Trowbridge v. Scranton Artificial Limb Company*, … 747 A.2d 862, 864 ([Pa.] 2000) [((opinion announcing the judgment of the Court)] (citing *Associated Hospital Service of Philadelphia v. Pustilnik*, … 439 A.2d 1149, 1151 ([Pa.] 1981)).[19]
>
> In *Trowbridge*, we reviewed the question of whether judicial estoppel barred a claim made by an individual pursuant to the Pennsylvania Human Relations Act (PHRA) that her job termination resulted from illegal discrimination under the PHRA, when she was receiving Social Security disability benefits based on her sworn statement that she was unable to work because of her disabling condition. We reiterated that the purpose of judicial estoppel is "to uphold the integrity of the courts by 'preventing parties from abusing the judicial process by changing positions as the moment requires.'" *Trowbridge*[, 747 A.2d] at 865…. In *Tops Apparel Mfg. Co. v. Rothman*, 244 A.2d 436 ([Pa.] 1968), our Court stated that "[a]dmissions … contained in pleadings, stipulations, and the like are usually termed 'judicial admissions' and as such cannot be later contradicted by the party who made

---

[19] Our High Court acknowledged, however, that "[w]hether successful maintenance of the prior inconsistent position of litigant is strictly necessary to implicate judicial estoppel in every case, or whether success should instead be treated as a factor favoring the doctrine's application, is the subject of some uncertainty." *In re Adoption of S.A.J.*, 838 A.2d 616, 620 n.3 (Pa. 2003) (citations omitted). The Court explained that, "[w]hile some prior decisions of this Court appear to indicate that it is always a requirement, others seem to suggest that a broader application of the doctrine may be appropriate." *Id.* (citations omitted). Because we determine that Mr. Yoder successfully maintained his position, *see infra*, we need not confront whether successful maintenance is merely a factor or a strict requirement.

them." ***Id.*** at 438 (internal footnote omitted). In ***Tops***, we noted our longstanding reliance on this principle and stated that "[w]hen a man alleges a fact in a court of justice, for his advantage, he shall not be allowed to contradict it afterwards. It is against good morals to permit such double dealing in the administration of justice." ***Id.*** at 438, n.8…. "Federal courts have long applied this principle of estoppel where litigants play 'fast and loose' with the courts by switching legal positions to suit their own ends." ***Trowbridge***[, 747 A.2d] at 865….

***In re Adoption of S.A.J.***, 838 A.2d at 620-21 (some internal citations omitted). ***See also Black v. Labor Ready, Inc.***, 995 A.2d 875 (Pa. Super. 2010) (determining that a company was judicially estopped from claiming that it was the plaintiff's employer, making it immune from civil suit, where the company had previously successfully maintained that it was not the plaintiff's employer in earlier workers' compensation proceedings).

Here, Mr. Yoder represented in the Compromise and Release Agreement that he was an employee of RRR, not an independent contractor. He successfully maintained that position, as holding himself out as an employee of RRR enabled him to receive workers' compensation benefits. ***See Universal Am-Can, Ltd.***, 762 A.2d at 330 ("An independent contractor is not entitled to benefits because of the absence of a master/servant relationship. [E]mployee or independent contractor status is a crucial threshold determination that must be made before granting workers' compensation benefits. It is a claimant's burden to establish an employer/employee relationship in order to receive benefits.") (citations omitted). Now, in this action, he claims that he was not an employee of RRR but, instead, an

independent contractor who RRR hired to work on the project. *See* Mr. Yoder's Brief at 32.

We do not see how, at the time of the accident, Mr. Yoder could be **both** an employee of RRR and an independent contractor of RRR. In addition, Mr. Yoder does not make any attempt in his brief to explain, reconcile, or otherwise justify these seemingly inconsistent positions, despite having the opportunity to do so. As such, we conclude that Mr. Yoder is judicially estopped from now claiming that he was an independent contractor of RRR. Instead, given his receipt of workers' compensation benefits, we determine that he was an employee of RRR at the time of the accident.[20] McCarthy, therefore, has satisfied the fifth **McDonald** element.[21]

_____

[20] Based on our review of the record, it appears that McCarthy did not specifically raise the theory of judicial estoppel until its July 16, 2021 motion, which the trial court later struck. However, because statutory-employer immunity is non-waivable and may be raised *sua sponte*, **see** *supra*, McCarthy's failure to raise this theory earlier in the litigation does not preclude us from considering it now.

[21] Mr. Yoder and the trial court both emphasize that McCarthy did not proffer evidence at trial to support its position that Mr. Yoder was an employee of RRR, and instead relied heavily upon Mr. Yoder's IRS 1099 tax forms, which tend to support that he was an independent contractor of RRR (and not RRR's employee). **See** Mr. Yoder's Brief at 36, 37 (observing that McCarthy "placed before the jury again and again [Mr.] Yoder's tax returns, which confirmed that RRR was paying [Mr.] Yoder as an independent contractor rather than as an employee[,]" and that McCarthy "did not attempt to prove that [Mr.] Yoder was an employee of RRR at the time of the accident only to have the trial court somehow prohibit McCarthy from doing so"); TCO at 5-6 (similarly observing that McCarthy "relied on Mr. Yoder's IRS 1099 form to show the amount of money that he was entitled to recover based upon his yearly earnings[,]" and
*(Footnote Continued Next Page)*

*First **McDonald** Element*

Although the trial court did not discuss the other ***McDonald*** elements in its Rule 1925(a) opinion, we examine them to see if McCarthy likewise satisfies them.[22] The first ***McDonald*** element requires "[a]n employer who is under contract with an owner or one in the position of an owner." ***McDonald***, 153 A. at 426. "This part of the ***McDonald*** test consists of three distinct sub-elements: (1) an employer; (2) a contract, and; (3) an owner or one in the position of an owner." ***Peck v. Delaware County Board of Prison***

---

that McCarthy "proffer[ed] no evidence to support [Mr.] Yoder's status as an employee"). We deem these points uncompelling.

Initially, given the trial court's ruling that McCarthy was precluded from raising the statutory-employer defense at trial in any manner whatsoever, it would make sense that McCarthy would not proceed to proffer evidence at trial that Mr. Yoder was RRR's employee. Notwithstanding, and counter to the arguments made by the trial court and Mr. Yoder, the record shows that McCarthy **did** press Mr. Yoder at trial as to whether he was an employee of RRR. **See** N.T., 6/14/21 (A.M.), at 84-85 (McCarthy's counsel asking Mr. Yoder if it was true that, at the time of the accident, he was an employee of RRR); N.T., 6/10/21 (P.M.), at 145-46 (asking Mr. Yoder if he would have continued his employment with RRR if not for the accident, to which Mr. Yoder indicated in the affirmative); **id.** at 155 (asking Mr. Yoder if he received an employee manual from RRR). Further, with respect to the tax forms, McCarthy persuasively argues that it "used the forms to cast doubt on [Mr. Yoder's] claimed earnings and the projections of his economic expert, not to establish that he was an independent contractor." McCarthy's Reply Brief at 21 (citations omitted). Finally, and arguably most importantly, we reiterate that our scope of review on this issue encompasses the whole record, so we are not confined to the evidence McCarthy introduced at trial anyway.

[22] Recall that, in prior rulings, the trial court had previously stated that McCarthy did not satisfy **any** of the ***McDonald*** elements.

*Inspectors*, 814 A.2d 185, 190 (Pa. 2002) (opinion announcing the judgment of the Court).

Here, the record shows that McCarthy was under contract with the Norwood Borough, the owner of the library where the accident occurred. *See* McCarthy's Exhibit 30 (Contract between McCarthy and Norwood Borough) (hereinafter, "Contract"). The contract identifies McCarthy as the 'Contractor,' and the Norwood Borough as the 'Owner.' *Id.* at 1 (unpaginated). In the contract, McCarthy agrees to remove and replace the library's existing roof, and perform various other tasks, for a grand total of $117,590.00. *Id.* at 3 (unpaginated).[23] Thus, it appears that McCarthy has met the first *McDonald* element, as it has a contract with the owner.

Mr. Yoder, however, argues that McCarthy has not fulfilled this element. He claims:

> To qualify as a statutory employer under the first prong of the *McDonald* test, McCarthy must establish that it was in the role of a general contractor on the Norwood Public Library construction project. McCarthy is unable to do so on this record. Norwood Borough, the owner of the property, entered into a contract with McCarthy only for the carpentry and roofing work on the library building. Separately, Norwood Borough entered into electrical and HVAC contracts for this project with other contractors. Thus, it was Norwood Borough, rather than McCarthy, that functioned in the role of general contractor for the library renovation project.

Mr. Yoder's Brief at 46-47 (citation to reproduced record omitted).

_____

[23] In addition, the subcontract between McCarthy and RRR similarly states that "Contractor [(McCarthy)] and Norwood Borough (hereinafter 'Owner') have entered into a contract … for the construction of Norwood Library Renovation & Roof Replacement…." McCarthy's Motion for Summary Judgment, 1/28/20, at Exhibit D ("Subcontract") at 1.

Assuming *arguendo* that McCarthy was only responsible for the carpentry and roofing work on the library as Mr. Yoder contends, Mr. Yoder offers no authority to support his claim that McCarthy must be the general contractor of the library renovation project to qualify as a statutory employer under the first element of the **McDonald** test. Moreover, our own research reveals that Mr. Yoder's assertion is inaccurate under the relevant law. This Court has previously explained:

> The classic statutory[-]employer situation is in the construction industry, where a property owner hires the general contractor, who hires a subcontractor to do specialized work on the jobsite, and an employee of the subcontractor is injured in the course of his employment. In those situations, the general contractor who meets the five-part **McDonald** test qualifies as the statutory employer of the subcontractor's employee, and is immune from suit by that employee. ***Moreover, under the [WCA], a contractor need not be the general contractor on a construction project to qualify as a statutory employer. A contractor who is not the general contractor may still qualify for statutory employer status so long as the contractor can establish the elements of the McDonald test.***

**Braun v. Target Corp.**, 983 A.2d 752, 764-65 (Pa. Super. 2009) (cleaned up; emphasis added). **See also McCarthy v. Dan Lepore & Sons Co., Inc.**, 724 A.2d 938, 941 (Pa. Super. 1998) ("Under the [WCA], a contractor need not be the general contractor on a construction project to qualify as a statutory employer. This Court has stated that a general contractor's subcontractor on a construction project may also qualify as a 'statutory employer' with respect to its own subcontractor's employees.") (citations and footnote omitted); **Grant v. Riverside Corp.**, 528 A.2d 962, 966 (Pa. Super. 1987) ("[I]t is not mandatory that a contractor be the general contractor on a construction

project to qualify as a statutory employer. A subcontractor under contract with the owner or with a contractor in the position of the owner, in sole or common control of the job premises, that subcontracts a part of its regular business to a second subcontractor, could qualify as a statutory employer of the second subcontractor's employees.") (citation omitted).

Thus, McCarthy does not need to have been the general contractor on the project, so long as the other elements of the *McDonald* test are established. Because McCarthy has a contract with the owner, we deem the first *McDonald* element satisfied.

*Second **McDonald** Element*

The second *McDonald* element requires that McCarthy occupy or control the premises. *See McDonald*, 153 A. at 426 (calling for "[p]remises occupied by or under the control of such employer"). We have explained that, "[u]nder the second prong of *McDonald*, an employer's occupancy or control must be actual, but need not be exclusive. An employer satisfies the second prong by proving either occupancy *or* control and it is not required to prove both." *Braun*, 983 A.2d at 764 (internal citations and brackets omitted; emphasis in original).

Though only occupancy or control is required, we conclude that McCarthy has established both. Initially, with respect to occupancy, this Court has agreed that "an employer effectively occupied the premises when its supervisor was present at the site on a daily basis and when its employees were regularly present on the premises at the same time as the

- 28 -

subcontractor's employees." ***Kelly v. Thackray Crane Rental, Inc.***, 874 A.2d 649, 657 (Pa. Super. 2005) (citing ***Al–Ameen v. Atlantic Roofing Corp.***, 151 F.Supp.2d 604, 607 (E.D. Pa. 2001)). ***Accord Braun***, 983 A.2d at 765 (finding occupancy requirement satisfied where the company's project manager was on site every day and easy to locate, and where the company kept a trailer on site).

Further, regarding control, this Court has stated that the contractor need not have control over the entire job premises, but only the part of the job premises where the injury occurred. ***See McCarthy***, 724 A.2d at 942. We have also conveyed that "the fact that the subcontractor used its own supervisors to directly oversee the subcontractor's employees does not mean the general contractor did not retain actual control over the project and premises in general." ***Emery v. Leavesly McCollum***, 725 A.2d 807, 811 (Pa. Super. 1999) (*en banc*) (citation omitted). To exemplify, this Court has found the control requirement satisfied where the contractor had an on-site project superintendent who coordinated the work of various subcontractors and was responsible for overseeing the entire project, including the overall safety of the job site and that OSHA regulations were followed. ***Emery***, 725 A.2d at 811, 811 n.3. ***See also Pastore v. Anjo Construction Co.***, 578 A.2d 21, 26 (Pa. Super. 1990) (determining that the second ***McDonald*** element was satisfied where the contractor had the "responsibility and authority to direct, manage and/or operate the construction project where the injury occurred" and where the contractor's foreman helped to address problems arising out of

the subcontractor's work); ***Uhzo v. Top Gun Construction, Inc.***, 2021 WL 1292781, at *5 (Pa. Super. filed Apr. 7, 2021) (deeming the second ***McDonald*** element satisfied where the contractor had a trailer on the premises and a project manager/superintendent who did scheduling and oversaw the entire worksite and subcontractors).[24]

> Here, Mr. Yoder specifically alleged in his amended complaint that:
>
> [McCarthy], individually and by its agents, servants, workmen and/or employees designed, maintained, possessed, developed, managed, supervised, and/or controlled the construction including of the roof at Norwood Library….

Amended Complaint, 9/20/18, at ¶ 3. ***See also id.*** at ¶ 18 (stating that McCarthy "undertook the supervision and control of the construction which was being undertaken at the [p]roperty, and in connection therewith, established plans, recommendations, designs and specifications for the performance of said construction work at the [p]roperty"); ***id.*** at ¶ 19 (averring that McCarthy "was on site and responsible to see and oversaw that the work performed on the [p]roperty was done according to the construction documents and pursuant to applicable industry practices and standards").

In addition, the trial court recognized that McCarthy was responsible for the safety of the job site. TCO at 1. It conveyed that, "[i]n accordance with OSHA safety procedures required of the general or prime contractor on the job site, McCarthy … had the nondelegable duty to provide a safe work site

---

[24] ***See*** Pa.R.A.P. 126(b) (stating that an unpublished non-precedential memorandum decision of the Superior Court filed after May 1, 2019, may be cited for its persuasive value).

under [OSHA] requirements. McCarthy … admitted that it was their responsibility to patch the hole in the roof in 'tongue and groove' style as this is an established specialty for carpenters, not roofers, and RRR did not have the skill to have filled in the hole." *Id.* (citations omitted).[25]

Further, at trial, Michael McCarthy — an employee of McCarthy — testified that he was on the roof at the time Mr. Yoder fell. N.T., 6/8/21, at 34-35. Michael McCarthy stated that McCarthy did work on the roof and confirmed that part of its job was to use tongue-and-groove to close any hole on the roof. *Id.* at 49, 53-54. He explained that, on the day of the incident, he and others from McCarthy "were patching holes throughout the roof, rotted wood, anything that was damaged from … age or water issues. And we were also patching three holes from the HVAC units." *Id.* at 94. In addition, Michael McCarthy noted that McCarthy was also doing work inside of the library, both upstairs and downstairs, including carpentry, painting, and ceiling work. *Id.* at 48-49. As a general contractor, Michael McCarthy agreed that McCarthy oversaw its subcontractors and scheduled them, and that — with respect to the library project — it was McCarthy's job to communicate effectively with the subcontractor roofers in order to complete the project. *Id.* at 37-39, 41-42, 50.

Dave Adams of RRR — the foreman on the day of the incident — also testified that McCarthy was the general contractor of the library project, and

---

[25] Tongue-and-grove refers to "one by six pieces of wood, lumber, and they snap into each other and you nail them down." N.T., 6/8/21, at 49.

that carpenters employed by McCarthy were also working on the roof. N.T., 6/17/21 (A.M.), at 32-33, 56, 60-61. Mr. Adams noted that it was McCarthy's responsibility to fill in any holes, and that he told McCarthy's carpenters to fill and cover the hole through which Mr. Yoder fell. *Id.* at 32-33, 47.

McCarthy also points out that, in his opening statement at trial, Mr. Yoder's counsel stated the following:

> This is a case about job site safety. It's a lawsuit against McCarthy…. McCarthy … entered into a contract. We all know what a contract is, a promise, with a governmental agency, the Borough of Norwood, it was a contract that they entered into in which they promised, they agreed pursuant to that contract, they would be responsible for safety, the safety of the workers in doing the work that they were paid to do. And most importantly, they were responsible for *supervising* to assure that the work was done not only safely[,] but in compliance with the safety standards.

N.T., 6/7/21 (Opening Statements), at 3 (emphasis added); *see also id.* at 8 (Mr. Yoder's counsel stating that "[Mr. Yoder] knows that no worker, whether the general contractor or prime contractor such as McCarthy, is to permit any workers to be working on a site in which there are any holes. Because OSHA says you can't do that, it has to be filled immediately. And they were *supervising* the site") (emphasis added); *see also id.* at 19-20 (Mr. Yoder's counsel conveying: "[T]he evidence is going to show[,] and you're going to hear the witnesses explain to you[,] that when you have multi-employers on site, such as McCarthy … and other contractors, they had to be responsible through the coordination of work so when one contractor finishes, the general contractor is right there because they know the schedule of work

to make sure the area is safe"); *id.* at 23 (McCarthy's counsel explaining: "You're going to hear that McCarthy knew that when the curb was taken down, there would be a hole.[26]  And McCarthy knew, and this is important, prior to Mr. Yoder's falling, McCarthy knew that hole was on that roof.  They knew it.  They failed to comply with their contract, they failed to comply with OSHA, and they failed miserably with respect to their duties and responsibilities.  And we're going to prove that to you"); N.T., 6/22/21 (P.M.), at 33 (Mr. Yoder's closing argument: "Michael McCarthy explained to you that McCarthy … acts as the general contractor.  Their superintendent was Mr. Scott Novak.  [Michael McCarthy] explained to you that part of what a general contractor does is they coordinate the work, they know what the plans are, they know what the work schedule is going to be and they know what their job responsibilities are.  They knew that curb was coming off and they knew that only … McCarthy had the carpenters and only McCarthy were the ones that were contracted and paid to fill that hole"); *id.* at 35-36 ("McCarthy was paid … money to do construction work, including … replacing the roof.  Remember the contract said that you are being paid not only to put on a new roof, you're being paid to **supervise** the work that we're paying you to do, and you're

---

[26] For context, Michael McCarthy conveyed that, prior to the library construction starting, there were air-conditioning units on the roof that had to be removed.  N.T., 6/8/21, at 51.  He agreed that, once the air-conditioning units were removed, they would leave curbing.  *Id.*  He also confirmed that, when that curbing would be removed, there would be holes in the roof.  *Id.*  *See also* N.T., 6/10/21 (P.M.), at 58 (Mr. Yoder's explaining that "[a] curb could either be wood or metal.  AC [u]nits will sit on top of it").

being paid to protect the workers doing the work that we're paying you to do.") (emphasis added).

Based on the foregoing, we conclude that McCarthy has satisfied the second *McDonald* element. Not only did McCarthy occupy the site in that it was doing work both on the roof and inside of the library, it also communicated with the subcontractors to ensure the library project's completion and had responsibility for the safety of the job site. Further, Mr. Yoder's counsel emphasized to the jury multiple times that McCarthy acted as the general contractor on the project, coordinating, scheduling, and supervising the work to be done.[27] As such, McCarthy meets the second *McDonald* element, as it both occupied and controlled the job site.

*Third **McDonald** Element*

The third *McDonald* element calls for a subcontract made by McCarthy. *McDonald*, 153 A. at 426 (demanding "[a] subcontract made by such

---

[27] Mr. Yoder argues that McCarthy does not meet the second *McDonald* element because Michael McCarthy testified that, "if he was on the roof and had seen the hole through which [Mr.] Yoder fell, he would have immediately covered it over so that it would no longer present a falling hazard. This is direct testimony that McCarthy was not in control or possession of the roofing work site area." Mr. Yoder's Brief at 48-49 (citation omitted).

We disagree with Mr. Yoder's analysis. Assuming *arguendo* that Michael McCarthy did not see and immediately cover the hole, this fact does not demonstrate that McCarthy was not in control or possession of the roofing work site area under the applicable case law. ***See*** *supra*. Further, if we were to accept Mr. Yoder's argument, a contractor would never be in control or possession of a job site if an undetected hazard was also present, which would make satisfying the second *McDonald* element extremely difficult.

employer"). Mr. Yoder does not dispute that McCarthy meets this requirement. Indeed, the record shows that McCarthy entered into a contract with RRR to, *inter alia*, "[r]emove and dispose of existing roofing systems down to existing wood roof deck." **See** Subcontract at 'Exhibit B: Scope of Work.' Additionally, in its contract with Norwood Borough, McCarthy identified RRR as its subcontractor. **See** Contract at 6 (Subcontractor Declaration Form) (unpaginated). Thus, we deem the third **McDonald** element satisfied.

*Fourth **McDonald** Element*

The fourth **McDonald** element demands that McCarthy entrusted a part of its regular business to RRR. **See McDonald**, 153 A. at 426 (mandating "[p]art of the employer's regular business [e]ntrusted to such subcontractor"). This Court has determined that the fourth **McDonald** element "is met when the subcontracted work is an obligation assumed by a principal contractor under its contract with the owner, or one in the position of an owner." **Braun**, 983 A.2d at 764 (citation omitted); **see also Shamis**, 81 A.3d at 970-71 ("[S]ince we cannot examine the underlying contract between the owner and Geppert Brothers, we cannot determine the fourth **McDonald** element: whether, at the time Mr. Shamis was hurt, he was engaging in work that was [p]art of [Geppert Brothers'] regular business [e]ntrusted to [M.L. Jones].") (internal quotation marks and citations omitted); **McCarthy**, 724 A.2d at 943 ("[The fourth **McDonald**] requirement is met when the subcontracted work is an obligation assumed by a principal contractor under its contract with the owner, or one in the position of an owner. Here, TUP employed Henco as the

general contractor for a new clinical research building. Henco contracted with Lepore to perform the exterior masonry work on the building. Lepore then subcontracted with Hamada to waterproof the exterior masonry work that Lepore had completed pursuant to its contract with Henco. Thus, the requisite vertical relationship between Henco, Lepore, and Hamada is established.") (citations omitted); *O'Boyle v. J.C.A. Corp.*, 538 A.2d 915, 917 (Pa. Super. 1988) ("[T]he only element in dispute is whether the structural concrete work was a part of Driscoll's regular business which it entrusted to Hoffer, the subcontractor who was O'Boyle's employer. This element, as a general rule, is satisfied wherever the subcontracted work is an obligation assumed by a principal contractor under his contract with the owner. Thus, Driscoll was a statutory employer if it had contracted with the owner to do work which included the structural concrete work and thereafter subcontracted that work to the subcontractor who was O'Boyle's employer.") (cleaned up).

Here, Norwood Borough contracted with McCarthy to, among other things, "[r]emove and [r]eplace existing roof w[ith ]new E.POM [r]oof with tapered insulation[.]" Contract at 3 (unpaginated). As mentioned *supra*, McCarthy then subcontracted with RRR to perform roofing work. **See** Subcontract at 'Exhibit B: Scope of Work' (McCarthy's contracting with RRR to to, *inter alia*, "[r]emove and dispose of existing roofing systems down to existing wood roof deck" and "[p]rovide rigid insulation, and tapered insulation with minimum slope of ¼" per foot as required for drainage"). As such, it appears that McCarthy satisfies the fourth **McDonald** element.

Nevertheless, Mr. Yoder contends that:

[T]he evidence at trial established that McCarthy is not a roofing company, never does any roofing work, and fails to hire roofers as a regular part of its business. Thus, when it entrusted the roofing work on the Norwood Library renovation project to RRR…, McCarthy was not entrusting "part of [McCarthy's] regular business" to RRR.

The evidence before the jury established that McCarthy is a mom-and-pop carpentry subcontractor. It does drywall, it does flooring, but it never does roofing. A company in the business of working as a general contractor on construction projects of this nature would hire roofers all the time as a regular part of its business. Here, by contrast, the evidence of record establishes that McCarthy never hires roofers. In fact, McCarthy hired roofers on this job and this job only.

Instead of agreeing that it has to strictly satisfy this fourth element of the **McDonald** test to invoke the statutory[-]employer defense, McCarthy urges this Court to essentially nullify this prong of the inquiry by holding that whenever one contractor subcontracts to another any task that is required to complete a task that the first contractor agreed to undertake, the first contractor has entrusted a regular part of its business to the subcontractor. This Court should reject McCarthy's effort to eliminate the "regular part of the delegating contractor's business" prong from the statutory[-]employer test, in direct contravention of Pennsylvania precedent requiring that each of the five parts of the **McDonald** test must be strictly satisfied.

Mr. Yoder's Brief at 49-50 (citations to reproduced record omitted).

We are unpersuaded by Mr. Yoder's argument. To begin with, he proffers and discusses no case law to substantiate that McCarthy must regularly perform roofing, or regularly hire roofers, to meet the fourth **McDonald** element. Further, as set forth above, our review of relevant cases supports that the key question is whether McCarthy's contract with Norwood Borough obligated it to perform roofing work. **See Braun**, **supra**; **Shamis**,

*supra*; *McCarthy*, *supra*; *O'Boyle*, *supra*.  The contract did so here.  Finally,

the portion of the record that Mr. Yoder cites to establish that McCarthy never

hires roofers is unconvincing of that point.  There, Michael McCarthy testified

to the following:

> [Mr. Yoder's counsel:] In terms of what McCarthy does, McCarthy has employees who are carpenters; would that be correct?
>
> [Michael McCarthy:] Yes.
>
> [Mr. Yoder's counsel:] They have people that do painting?
>
> [Michael McCarthy:] Yes.
>
> [Mr. Yoder's counsel:] You have laborers?
>
> [Michael McCarthy:] Yes.
>
> [Mr. Yoder's counsel:] Does McCarthy do any type of tar roofs?
>
> [Michael McCarthy:] No.
>
> [Mr. Yoder's counsel:] Asphalt roofs?
>
> [Michael McCarthy:] No.
>
> [Mr. Yoder's counsel:] Rubber roofs?
>
> [Michael McCarthy:] No.
>
> [Mr. Yoder's counsel:] Is McCarthy in the business of doing roofing?
>
> [Michael McCarthy:] We subcontract the roofing out.
>
> [Mr. Yoder's counsel:] But does McCarthy do roofing in the business of roofing?
>
> [Michael McCarthy:] Like I said, we subcontract that out.
>
> [Mr. Yoder's counsel:] That wasn't my question.  Am I correct that McCarthy does not put down roofs?
>
> [Michael McCarthy:] Correct.

[Mr. Yoder's counsel:] McCarthy does not have any roofers on staff?

[Michael McCarthy:] Correct.

[Mr. Yoder's counsel:] From 1998 up through October 2016, when Mr. Yoder was injured, had you worked for McCarthy … on jobs in which McCarthy … was the general contractor?

[Michael McCarthy:] Yes.

[Mr. Yoder's counsel:] Am I correct that you worked on over a hundred jobs in which McCarthy was the general contractor?

[Michael McCarthy:] Yes, I wouldn't say exactly a hundred, but give or take.

[Mr. Yoder's counsel:] [A]m I correct that your understanding as to what McCarthy did as a general contractor is that they oversaw the subcontractor?

[Michael McCarthy:] Yes.  If, in fact, we are the general contractor on that job, we oversee our subcontractors.

[Mr. Yoder's counsel:] So the answer to my question was yes?

[Michael McCarthy:] Yes.

[Mr. Yoder's counsel:] Are you familiar with what is referred to as the coordination of work?

[Michael McCarthy:] Yes.

[Mr. Yoder's counsel:] In the approximate hundred jobs that you've had before in which McCarthy was the general contractor, whoever [*sic*] saw the coordination of work, am I correct that Scott Novak was the employee of McCarthy who had that job?

[Michael McCarthy:] Yes.

[Mr. Yoder's counsel:] And, unfortunately, Mr. Scott Novak has passed away; is that correct?

[Michael McCarthy:] Yes.

[Mr. Yoder's counsel:] Mr. Novak had been with McCarthy … for approximately 35 years?

[Michael McCarthy:] Yes.

[Mr. Yoder's counsel:] Am I correct that Scott Novak's title was superintendent?

[Michael McCarthy:] Yes.

[Mr. Yoder's counsel:] Am I correct that the duties and responsibilities of the superintendent was to be responsible for all scheduling with subcontractors?

[Michael McCarthy:] I don't think he was solely responsible for that. My brother, Pat, who works at the office, handles a lot of the scheduling also.

N.T., 6/8/21, at 36-39.

The above-stated testimony does not support Mr. Yoder's argument that McCarthy never hired roofers, nor does it establish that McCarthy was not in the business of working as a general contractor on construction projects of this nature. Therefore, for the foregoing reasons, we determine that McCarthy fulfills the fourth *McDonald* element.

**Conclusion**

Because McCarthy meets all five elements of the *McDonald* test, we are constrained to conclude that it is Mr. Yoder's statutory employer, rendering it immune from tort liability.[28] While we express our displeasure with having to disturb the jury's verdict, taking away Mr. Yoder's damages award, we are bound by controlling law to reverse the judgment entered in favor of Mr. Yoder and remand for the entry of judgment in favor of McCarthy.

Judgment vacated. Case remanded for judgment to be entered in favor of McCarthy. Jurisdiction relinquished.

---

[28] In light of our disposition, we need not address McCarthy's remaining issues.

- 40 -

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/31/2023</u>