IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Millcreek Township School
District
          v.

Erie County Board of Assessment
Appeals

          v.

Wegmans Food Markets, Inc.,

          Appellant

:
: No. 39 C.D. 2015
: Argued:  November 16, 2015
:
:
:
:
:
:
:
:
:
:
:
:
:
:


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge[1]
              HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION BY SENIOR JUDGE FRIEDMAN[2]       FILED:  June 13, 2016


       Wegmans Food Markets, Inc. (Wegmans) appeals from the December 29, 2014, order of the Court of Common Pleas of Erie County (trial court) that granted the appeal of Millcreek Township School District (District) and increased the assessed value of two parcels of property owned by Wegmans.  We vacate and remand for further proceedings.

---

[1] This case was argued before a panel of the court that included former Judge Bernard L. McGinley.  Because Judge McGinley retired on January 31, 2016, this matter was submitted on briefs to Judge Wojcik as a member of the panel.

[2] This case was reassigned to Senior Judge Friedman on February 23, 2016.

Wegmans owns property at 5028 West 23rd Street (West 23rd Street) and 6143 Peach Street (Peach Street) (together, Properties) in Millcreek Township, Erie County. In 2004, District filed tax assessment appeals with the Erie County Board of Assessment Appeals (Board), seeking to increase the assessed values of the Properties. The Board denied the appeals. District appealed to the trial court and Wegmans intervened, seeking a reduction of the Properties' assessments.

Before the trial court, the parties stipulated that the tax years at issue included calendar years 2005 through 2014. The parties further agreed to the common-level ratio applicable for each year and the total assessed values that were established by the Board. Finally, the parties stipulated as to the physical characteristics of each property. The Peach Street store was built in 1993, is comprised of 122,859 square feet, and sits on 17.5 acres. The West 23rd Street store was built in 1997, is comprised of 84,840 square feet, and sits on 13.9 acres.

District presented the testimony of Robert Glowacki, a licensed real estate appraiser, who is the president of Assessment Evaluation Inc. and the owner of Glowacki Management Company, LLC. (Trial Ct.'s Findings of Fact, No. 13.) Glowacki considered the cost, income, and comparable sales approaches in determining the Properties' values. (*Id*., No. 16.) He placed the most emphasis on the income approach and the least emphasis on the comparable sales approach. (*Id.*, No. 17.)

Glowacki testified that the highest and best uses of the Properties are as grocery stores. (*Id*., No. 18.) As to the income and cost approach, Glowacki

2

utilized a range of properties, including lease data and prior sales. (*Id.,* No. 21.) Glowacki's proposed value of West 23rd Street ranged from $9 million in 2005 to $10 million in 2014. (*Id.,* No. 6.) Glowacki's proposed value for Peach Street ranged from $13.5 million in 2005 to $14 million in 2014. (*Id.,* No. 5.)

Wegmans presented the testimony of Douglas A. Herold, a certified general appraiser who has conducted real estate evaluations for more than 20 years. (*Id.,* No. 22.) Herold determined that the highest and best use of West 23rd Street was "'some alternative commercial use or some type of multi-tenant related use.'" (*Id.* (citation omitted).) For Peach Street, Herold concluded that the highest and best use was "to break it up into a multi-tenant building.'" (*Id.* No. 29 (citation omitted).) Herold considered but did not rely on either the cost or income approach in valuing the Properties. (*Id.,* No. 26.) Instead, Herold relied on the comparable sales approach. (*Id.,* No. 28.)

In determining the Properties' values, Herold used the same four comparable sales. (*Id.,* No. 30.) Herold's proposed value of West 23rd Street ranged from $2.4 million in 2005 to $2.1 million in 2014. (*Id.,* No. 2.) Herold's proposed value for Peach Street ranged from $3.6 million in 2005 to $3.08 million in 2014. (*Id.,* No. 3.)

The trial court found that in 1998, Wegmans retained Barry Polayes, a certified appraiser, who concluded that the highest and best use of the Properties was retail. (*Id.,* No. 32.) Polayes utilized all three methods of appraisal but relied primarily on the cost and income approaches. (*Id.,* No. 33.) In his market analysis

3

of comparable sales, Polayes used 10 properties, including properties outside of Erie County but in similar locations. (*Id*., No. 34.) For each method of appraisal, Polayes did a thorough analysis, including a quantification of the comparable data where available. (*Id*., No. 35.) Polayes determined that the market value of West 23rd Street was $7.7 million and the market value of Peach Street was $9.6 million.[3] (*Id*., No. 31.)

In analyzing the testimony of the experts, the trial court noted that Herold had limited experience in appraising properties of the type at issue in the Erie market. The trial court observed that because Herold only used the comparable sales method in reaching his value conclusions, it was difficult to assess the validity of those conclusions. Further, Herold's opinion that the Properties could not be used as grocery stores in the future was not based on an independent investigation of the marketplace. Rather, his opinion was based on his own general knowledge of the grocery store marketplace, which the trial court found unpersuasive.

Additionally, the properties that Herold selected as comparable were not sufficiently similar in character to the Properties. The trial court observed that Polayes' earlier appraisal demonstrated a more sophisticated approach to reconciling different properties for comparative purposes.

---

[3] Polayes prepared a report in 1998 for Peach Street and determined market values as of September 1, 1994, through 1997. (Polayes Report, 11/19/98, at 1-2.) Polayes also prepared a report for West 23rd Street in 1998 and determined market values as of September 1, 1996, and 1997. (Polayes Report, 11/26/98, at 1-2.) The $9.6 million referenced by the trial court is for September 1, 1994, (Polayes Report, 11/19/98, at 1), and the $7.7 million is for September 1, 1997. (Polayes Report, 11/26/98, at 2.)

The trial court further found that Herold's conclusion that the Properties should be valued using the same amount per square foot lacked convincing justification. Herold did not utilize a quantitative analysis or make any other attempt at an objective determination of value based on comparable sales and, further, gave no serious consideration to the recent sale of the East 38th Street Tops store. The trial court observed that Herold's approach to valuation and his conclusions were different from the approach and conclusions reached by Polayes. Further, Herold did not provide a persuasive explanation as to why the value of each property had decreased since Polayes prepared his reports. The trial court found Herold's valuations not credible.

As to Glowacki, the trial court noted that he used all three approaches to valuation and determined that Glowacki's income approach was the most convincing. Glowacki determined that the fair rental value of Peach Street and West 23rd Street for the years at issue was $11 per square foot. After adjustments for vacancy and expense, Glowacki estimated the net yearly income for Peach Street at $1,219,683, and for West 23rd Street at $842,249. Although Glowacki did not include in his calculation the known rental for the Tops store on East 38th Street, the trial court determined that the $11-per-square-foot rate was supported by sufficient evidence.

Overall, the trial court determined that District, via the testimony of Glowacki, presented a reasonable conclusion as to the fair market value for each property and assessed West 23rd Street from $6,837,000 to $9,000,000 and Peach

5

Street from $9,937,500 to $13,500,000 for the tax years 2005 through 2014. This appeal followed.[4]

Initially, Wegmans argues that the trial court erred in admitting the appraisal reports of Polayes, who did not testify before the trial court. We agree.

Before the trial court, after Wegmans rested its case-in-chief, District offered as rebuttal evidence the certified copy of Wegmans' pretrial narrative statement in an earlier tax assessment case[5] that contained Polayes' reports. Polayes' reports, prepared in 1998, stated that the Properties' highest and best use was retail and valued the Properties from 1994 through 1997. Although Wegmans objected to Polayes' reports as hearsay, the trial court admitted Polayes' reports pursuant to the hearsay exception in Pa. R.E. 803(25), relating to statements of opposing parties.

Before addressing the merits of the applicability of Pa. R.E. 803(25), we will address District's argument that Wegmans waived the issue. Before the trial court, counsel for Wegmans objected to the introduction of Polayes' reports stating that District "is trying to offer the opinion of another expert who hasn't testified in this case. [T]hose opinions are not admissible for that purpose alone." (N.T., 10/27/13, at 60.) Counsel for Wegmans further stated that Wegmans was

---

[4] This court's review in a tax assessment appeal is limited to determining whether the trial court abused its discretion or committed an error of law and whether the decision is supported by substantial evidence. *Westinghouse Electric Corporation v. Board of Property Assessment*, *Appeals and Review of Allegheny County*, 652 A.2d 1306, 1309 (Pa. 1995).

[5] The parties settled the earlier case.

6

"rais[ing] a hearsay objection to the extent that we're dealing with an expert who is not here to testify." (*Id*. at 61.)

Counsel for District then argued that Polayes' reports were admissible under Pa. R.E. 803(25) as an exception to the hearsay rule. The proponent of hearsay evidence has the burden of proving that a hearsay exception applies to the proffered evidence. *Commonwealth v. Smith*, 681 A.2d 1288, 1290 (Pa. 1996). Thus, although District argues that Wegmans failed to challenge the applicability of Pa. R.E. 803(25), it was District's burden to prove that the hearsay exception in Pa. R.E. 803(25) applied to Polayes' reports.

Additionally, contrary to District's assertion, Wegmans did not waive the issue of the admissibility of the hearsay evidence by raising it for the first time on appeal. As previously stated, Wegmans specifically objected to the admission of Polayes' reports based on relevance and hearsay. (N.T., 10/27/15, at 60-61.) District then claimed the hearsay rule exception in Pa. R.E. 803(25) applied. (*Id.* at 62.) The parties and the trial court discussed the applicability of the rule, and the trial court issued its ruling, concluding that Polayes' reports "are admissions constituting exception to the hearsay rule under [Pa. R.E.] 803(25)." (*Id.* at 70.) Wegmans again objected, and the trial court acknowledged Wegmans' continued objection to the admission of Polayes' reports. (*Id.* at 71.) Thus, we disagree with District that Wegmans has raised the issue of admissibility for the first time on appeal.

7

Next, we address the issue of whether the trial court properly admitted Polayes' reports. We initially observe that:

> [I]n evaluating an evidentiary ruling of a trial court our standard of review is extremely narrow. "The admission or exclusion of evidence is a matter within the sound discretion of the trial court, which may only be reversed upon a showing of a manifest abuse of discretion." "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party."

*Lock v. City of Philadelphia*, 895 A.2d 660, 665 (Pa. Cmwlth. 2006) (citations omitted).

Pa. R.E. 801(c) provides that "'[h]earsay' means a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."[6] Pa. R.E. 803(25)[7] provides that:

---

[6] On appeal, District argues that Polayes' reports are not hearsay because the reports were "not offered to prove the truth of the matter asserted." (District's Br. at 12.) However, before the trial court, counsel for District maintained that the reports were admissible to prove their content. (N.T., 10/27/15, at 57.) Further, District did not dispute the characterization of Polayes' reports as hearsay. (*Id.* at 61-62.)

[7] The language in Pa. R.E. 803(25) appears in Fed. R. Evid. 801(d), upon which the Pennsylvania rule is based. *See* Comment to Pa. R.E. 803(25). The Comment further states that although the Pennsylvania Rules of Evidence describe opposing party statements as an exception to the hearsay rule, the Federal Rules of Evidence define the statements as "not hearsay." When interpreting Pennsylvania evidentiary rules, our courts are encouraged to review and consider federal and sister state courts' interpretations of similarly-worded rules. *See Commonwealth v. Treadwell*, 911 A.2d 987, 991 (Pa. Super. 2006).

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

> (25) An Opposing Party's Statement. The statement is offered against an opposing party and:
>
> (A) was made by the party in an individual or representative capacity;
>
> (B) is one the party manifested that it adopted or believed to be true;
>
> (C) was made by a person whom the party authorized to make a statement on the subject[.]

Here, the trial court admitted Polayes' reports "as a statement made on behalf of Wegmans as an admission under Pa. R.E. 803(25)." (Supp. Op., 3/4/15, at 6.)[8]

In *Kirk v. Raymark Industries, Inc.*, 61 F.3d 147, 152 (3d. Cir. 1995), "Kirk alleged that her husband's mesothelioma was caused by exposure to dust from asbestos products during his employment at [a] [s]hipyard." During the liability phase of the trial, the defendant presented expert medical testimony that the "majority of asbestos-induced mesotheliomas are caused by crocidolite asbestos fiber." *Id.* at 162.

Over defendant's objection, the district court permitted Kirk to read to the jury the expert testimony of a witness defendant hired in a previous, unrelated case. *Id.* at 163. The prior testimony was contrary as to which asbestos fibers cause mesothelioma. *Id.* The defendant appealed, arguing that the district court

---

[8] The trial court stated that Polayes' reports did not constitute expert evidence. (Supp. Op., 3/4/15, at 2.)

erred in allowing the prior testimony because it was hearsay. *Id.* Kirk argued that the testimony was not hearsay because the testimony of an expert used by the defendant in a previous trial could be used against the defendant in a subsequent trial as an authorized admission. *Id.*

On appeal, the Third Circuit determined that the district court erred in admitting the prior testimony of a witness in another trial. *Id.* at 170. "Because an expert witness is charged with the duty of giving *his or her* expert *opinion* regarding the matter before the court, we fail to comprehend how an expert witness, who is not an agent of the party who called him, can be authorized to make an admission for that party." *Id.* at 164. Additionally, the Third Circuit held that "[t]o the extent that *Collins* [*v. Wayne Corporation*, 621 F.2d 777 (5th Cir. 1980)] holds that an expert witness who is hired to testify on behalf of a party is automatically an agent of that party who called him and consequently his testimony can be admitted as non-hearsay in future proceedings, we reject this rule." *Kirk*, 61 F.3d at 164 n.20.

Here, the trial court erred in determining that Polayes was Wegmans' representative. Specifically, Wegmans merely hired Polayes to prepare reports. We find no support in the record for the trial court's determination that "Polayes acted in a representative capacity as he was the person designated by Wegmans to relate its position . . . ." (Supp. Op., 3/4/15, at 3.) Wegmans requested Polayes to provide an opinion in 1998, not to act as its agent or its representative as outlined in Pa. R.E. 803(25). Accordingly, the trial court erred in admitting Polayes' reports.

10

Additionally, Polayes' reports involved appraisals for the years 1994 through 1997. The reports are not relevant to the value of the Properties for calendar years 2005 through 2014.

Although the trial court erred in admitting Polayes' reports, "'[t]o constitute reversible error, an evidentiary hearing must not only be erroneous, but also harmful or prejudicial to the complaining party.'" *Lock*, 895 A.2d at 665 (citation omitted). The trial court in its supplemental opinion states that Wegmans did not suffer prejudice because even without the admission of Polayes' reports, the evidence was sufficient to support the trial court's conclusions. "Neither Mr. Polayes' valuation of the [P]roperties or his conclusions as to their highest and best use was adopted by the Court." (Supp. Op., 3/5/15, at 6-7.)

Despite the trial court's claim that Polayes' reports "had limited probative value," the trial court made specific findings and credibility determinations regarding Polayes' reports. (*Id.* at 6.) The trial court found that "[f]or each of his value conclusions with regard to each method of appraisal Mr. Polayes did a thorough analysis." (*Id.*) The trial court also stated that it was "noteworthy that the Court had the benefit of Mr. Polayes' valuation reports." (*Id.* at 7.)

In discounting Herold's valuations, the trial court specifically compared the approaches used by Herold and Polayes. "An example of a far more sophisticated approach to reconciling different properties for comparative purposes is demonstrated in Mr. Polayes['] earlier appraisal conducted for Wegmans."

11

(Trial Ct. Op. at 8.)  Herold's "approach to valuation and his conclusion were different from the conclusion and approach utilized by Wegmans' previous appraiser [Polayes]." (*Id.* at 9.)  In discrediting Herold's testimony, the trial court further noted that Wegmans did not provide a persuasive explanation as to why the Properties had decreased in value since Polayes' reports. (*Id.*)

The trial court specifically relied on Polayes' reports to discredit Herold's testimony.  Thus, the admission of Polayes' reports was prejudicial to Wegmans.

Accordingly, we vacate the trial court's order and remand for a new hearing.[9]

_____

ROCHELLE S. FRIEDMAN, Senior Judge

_____

[9] Because we remand for a new hearing, we need not address Wegmans' additional issues.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Millcreek Township School
District

v.

Erie County Board of Assessment
Appeals

v.

Wegmans Food Markets, Inc.,

Appellant

: No. 39 C.D. 2015
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

O R D E R

AND NOW, this 13th day of June, 2016, we hereby vacate the December 29, 2014, order of the Court of Common Pleas of Erie County and remand for a new hearing.

Jurisdiction relinquished.

_____
ROCHELLE S. FRIEDMAN, Senior Judge