J-A28033-23

2024 PA Super 14

| N.T., A MINOR, BY AND THROUGH MARY JANE BARRETT, ESQUIRE, GUARDIAN OF THE ESTATE OF N.T. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellant | : | |
| v. | : | No. 3015 EDA 2022 |
| THE CHILDREN'S HOSPITAL OF PHILADELPHIA, STEPHANIE MANN, M.D., MARK P. JOHNSON, M.D., THE HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA AND STEVEN C. HORII, M.D. | : | |

Appeal from the Order Entered November 10, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  160301791

BEFORE:   OLSON, J., STABILE, J., and COLINS, J.[*]

OPINION BY COLINS, J.:                          **FILED JANUARY 25, 2024**

Appellant, N.T. (Minor), by and through Mary Jane Barrett, Esquire, guardian of her estate, appeals from an order of the Philadelphia County Court of Common Pleas dismissing her medical malpractice action against the Children's Hospital of Philadelphia (CHOP) and CHOP physicians Drs. Stephanie Mann and Mark P. Johnson (collectively, the CHOP defendants) and the Hospital of the University of Pennsylvania (HUP) and HUP radiologist Dr. Steven C. Horii (collectively, the HUP defendants) on the ground that Minor's

_____

[*] Retired Senior Judge assigned to the Superior Court.

claims are barred by judicial estoppel. For the reasons set forth below, we affirm.

This case is one of three cases filed on Minor's behalf seeking damages for the same injuries that she suffered *in utero* prior to her birth. In December 2007, when Minor's mother (Mother) was pregnant with Minor and her twin sister, Mother was diagnosed with twin-to-twin transfusion syndrome (TTTS) by her treating physicians in North Carolina. Complaint ¶¶29-34. TTTS is a condition where abnormal communicating blood vessels in the placenta allow blood to circulate between the fetuses that a woman is carrying, jeopardizing the survival of both fetuses. *Id.* ¶¶2-3. Mother's treating physicians referred her to CHOP for possible selective laser photocoagulation of communicating vessels treatment (SLPCV), and Mother was seen at CHOP on January 2, 2008. *Id.* ¶¶35-36. The CHOP defendants concluded that Mother was not a candidate for SLPCV, based on ultrasounds that were interpreted by the HUP radiologist as showing an infection, and did not perform SLPCV on Mother. *Id.* ¶¶36-41. Mother then went to an Ohio physician, Dr. Timothy Crombleholme, who performed SLPCV on Mother at Cincinnati Children's Hospital in Cincinnati, Ohio on January 14, 2008. *Id.* ¶¶9, 45-47. Minor was born in April 2008 with severe neurological deficiencies and her twin sister was born healthy with no neurological injury. *Id.* ¶¶10, 49-51.

On January 26, 2011, an action docketed as Case No. 110103674 (the 2011 action) was brought on Minor's behalf in the Philadelphia County Court

of Common Pleas against CHOP, Dr. Mann, and Dr. Crombleholme. The 2011 action sought damages for severe and permanent neurological injuries suffered by Minor, including cerebral palsy, microcephaly, optic atrophy, immature retinas, blindness, bilateral brain hemorrhages, a seizure disorder, and a near complete absence of a cerebellum, and alleged that Dr. Crombleholme negligently performed the SLPCV and that his SLPCV caused those injuries. 2011 Action Amended Complaint ¶¶8-9, 70-73, 76-77, 96-104. The complaint in the 2011 action further alleged that CHOP was liable for the injuries caused by Dr. Crombleholme because it allegedly inadequately trained him when he was a physician at CHOP and that CHOP and Dr. Mann were liable for Minor's injuries because they allegedly misdiagnosed the condition of the fetuses and negligently failed to treat the TTTS. 2011 Action Amended Complaint ¶¶8-9, 52-53, 78-95.

On December 21, 2012, the court dismissed Minor's claims against Dr. Crombleholme for lack of personal jurisdiction. The 2011 action continued against CHOP and Dr. Mann and in December 2014, a second amended complaint was filed adding Dr. Johnson as a defendant and alleging that the CHOP defendants were liable for Minor's injuries because they misdiagnosed the condition of the fetuses and negligently failed to treat the TTTS. 2011 Action Second Amended Complaint ¶¶46-72. This amended complaint also alleged that Dr. Crombleholme's SLPCV did not properly treat Minor's TTTS. *Id.* ¶41. On May 2, 2016, the trial court, over the CHOP defendants'

objections, granted the plaintiff's motion to discontinue the 2011 action without prejudice.

In 2013, while the 2011 action was pending, an action docketed as Case No. 1:13-cv-230 (the Ohio action) was filed on Minor's behalf against Dr. Crombleholme and Cincinnati Children's Hospital (the Ohio defendants) in federal district court in Ohio. The complaint in the Ohio action sought damages for the same injuries to Minor as the 2011 action and alleged that the Ohio defendants were liable for those injuries because Dr. Crombleholme negligently performed the SLPCV and his SLPCV caused Minor's injuries. Ohio Action Complaint ¶¶3, 71-107. Counsel for Minor in the Ohio action was the same counsel who represented Minor in the 2011 action.

On March 18, 2016, this action, Case No. 160301791, was filed on Minor's behalf against the CHOP defendants and the HUP Defendants in the Philadelphia County Court of Common Pleas. The complaint in this action sought damages for the same injuries to Minor as the 2011 action and the Ohio action. Complaint ¶¶50-51. This complaint alleged that the CHOP defendants were liable for Minor's injuries because they misdiagnosed the condition of the fetuses and negligently failed to treat the TTTS. *Id.* ¶¶52-75. The complaint alleged that the HUP defendants were liable for Minor's injuries on the ground that they allegedly failed to properly interpret Mother's ultrasounds and that the CHOP defendants relied on the HUP defendants' misinterpretation of the ultrasounds in their diagnoses and decision not to

- 4 -

perform SLPCV. *Id.* ¶¶36-44, 76-91. Counsel for Minor in this action is the same counsel who represented Minor in the Ohio action and the 2011 action.

The Ohio action went to trial in October 2017. Shortly before trial, Minor successfully moved to amend the Ohio complaint to add a claim for punitive damages based on the claims that her injuries were caused by Dr. Crombleholme's "blind firing" of the laser in performing the SLPCV, rather than directing it at vessels in the placenta at which it was supposed to be directed, and that Dr. Crombleholme took efforts to conceal the fact that her injuries were caused by his SLPCV. Ohio Action 9/28/17 Order at 1-3, 5-10. Minor also sought to exclude all reference to the present action from the trial of the Ohio action and the Ohio court ruled that the Ohio defendants could not mention this action in their opening statements. Ohio Action N.T., 10/11/17, at 5-11. At the trial of the Ohio action, Minor's medical expert on causation testified that Dr. Crombleholme caused Minor's injuries by firing the laser at healthy placenta tissue multiple times during the SLPCV and damaging 30% of the placenta that was nourishing Minor and testified that Minor's injuries were caused by hypoxic injury from the placental damage and not by TTTS. Ohio Action N.T. Trial, 10/16/17 a.m., at 113-15; Ohio Action N.T. Trial, 10/16/17 p.m., at 60-61, 65-66, 74, 77-78; Ohio Action N.T. Trial, 10/17/17 a.m., at 64. Minor's expert further testified that Minor's brain was normal and uninjured until the SLPCV was performed, that the TTTS was a Stage 2 when the SLPCV was performed, and that Minor's development would have been

normal and she would have had no brain damage if the SLPCV had been properly performed when it was done on January 14, 2008. Ohio Action N.T. Trial, 10/16/17 p.m., at 60-62, 64, 74; Ohio Action N.T. Trial, 10/17/17 a.m., at 63-64; Ohio Action N.T. Trial, 10/25/17, at 54. In addition, Minor's counsel argued to the jury that Minor had no brain injury when she came under Dr. Crombleholme's care, that she would have suffered no injury if he had properly performed the SLPCV, and that her injury was caused by Dr. Crombleholme damaging 30% of Minor's placenta and was not caused by TTTS. Ohio Action N.T. Trial, 10/13/17, at 11; Ohio Action N.T. Trial, 10/26/17, at 15-18.

While the jury was deliberating, Minor's claims against the Ohio defendants were settled for $7 million. Ohio Action Settlement and Release Agreement at 1. This settlement agreement provided that it did not apply to claims against the CHOP defendants and HUP defendants and that the plaintiff agreed "to refrain from making disparaging or critical statements about the care provided to [Minor] or [Mother]" by the Ohio defendants. *Id.* at 1, 5. This settlement was approved by a probate court in Ohio. Probate Court Docket at 3.

Following the settlement of the Ohio action, the CHOP defendants and HUP defendants were permitted to file and filed amended answers in this action pleading as new matter that Minor's claims were barred by judicial estoppel based on the Ohio action and settlement. CHOP Defendants'

Amended Answer and New Matter ¶¶106, 108; HUP Defendants' Amended Answer and New Matter ¶¶106, 108. On August 24, 2022, the CHOP defendants and the HUP defendants filed motions seeking dismissal of all claims against them in this action on the grounds, *inter alia*, that Minor's claims were barred by judicial estoppel.[1] On November 10, 2022, the trial court granted both motions and dismissed the action on the grounds that it was barred by judicial estoppel. Trial Court Order, 11/10/22; Trial Court Opinion, 11/10/22, at 4-7. This timely appeal followed.

Appellant presents the following single issue for our review:

Was it an error of law to dismiss the underlying action on judicial estoppel grounds?

Appellant's Brief at 4. The CHOP defendants and HUP defendants argue both that the trial court correctly concluded that this action was barred by judicial estoppel and that the dismissal can also be affirmed on alternative grounds. Whether an action is barred by judicial estoppel is a question of law. ***Widener University v. Estate of Boettner***, 726 A.2d 1059, 1061-62 (Pa. Super. 1999). Our standard of review of this issue is therefore *de novo*, and our scope of review is plenary. ***Buffalo Township v. Jones***, 813 A.2d 659, 664 n.4 (Pa. 2002).

---

[1] Prior motions seeking summary judgment had previously been denied by another trial court judge. Appellant, however, did not raise the coordinate jurisdiction rule as an issue in her brief and any claim that the dismissal of this action violated the coordinate jurisdiction rule is therefore waived. Pa.R.A.P. 2116(a); ***In re R.A.M.N.***, 230 A.3d 423, 431 (Pa. Super. 2020).

"Judicial estoppel is an equitable, judicially-created doctrine designed to protect the integrity of the courts by preventing litigants from 'playing fast and loose' with the judicial system by adopting whatever position suits the moment." ***Sunbeam Corp. v. Liberty Mutual Insurance Co.***, 781 A.2d 1189, 1192 (Pa. 2001) (quoting ***Gross v. City of Pittsburgh***, 686 A.2d 864 (Pa. Cmwlth. 1996)). Judicial estoppel bars a party from asserting a position in litigation that is inconsistent with a position that the party previously successfully maintained with respect to the same legal and factual issue. ***In re Adoption of S.A.J.***, 838 A.2d 616, 620 (Pa. 2003); ***Grabowski v. Carelink Community Support Services, Inc.***, 230 A.3d 465, 472 (Pa. Super. 2020); ***Black v. Labor Ready, Inc.***, 995 A.2d 875, 878 (Pa. Super. 2010). "The purpose of judicial estoppel is 'to uphold the integrity of the courts by preventing parties from abusing the judicial process by changing positions as the moment requires.'" ***Adoption of S.A.J.***, 838 A.2d at 621 (quoting ***Trowbridge v. Scranton Artificial Limb Co.***, 747 A.2d 862 (Pa. 2000)).

Here, the position taken on Minor's behalf in the Ohio action was inconsistent and incompatible with the liability theories asserted against the CHOP defendants and the HUP defendants in this action. In this action, Minor's claim was that the TTTS went from Stage 2 to a more serious Stage 3 at the time that she was treated in Ohio and that the untreated TTTS during the 12-day delay between Mother's arrival at CHOP on January 2, 2008 and the

performance of the SLPCV in Ohio on January 14, 2008 was a cause of her brain damage. Appellant's Brief at 5-7, 9; Kontopoulos Expert Report at 3; Rotenberg Expert Report at 2; Yohay Expert Report at 3; Abrahams Expert Report at 4; Reznick Expert Report at 2. This is directly contrary to the position taken on Minor's behalf in the Ohio action that Minor suffered no brain damage from the delay or from TTTS, that the TTTS was still Stage 2 when Minor was seen in Ohio, and that the sole cause of Minor's brain damage was the damage to 30% of Minor's placenta from the faulty SLPCV and resultant hypoxia from that damage. Ohio Action N.T. Trial, 10/13/17, at 11; Ohio Action N.T. Trial, 10/16/17 a.m., at 113-15; Ohio Action N.T. Trial, 10/16/17 p.m., at 60-62, 64-66, 74, 77-78; Ohio Action N.T. Trial, 10/17/17 a.m., at 63-64; Ohio Action N.T. Trial, 10/25/17, at 54; Ohio Action N.T. Trial, 10/26/17, at 15-18. The inconsistent position was successfully maintained in the Ohio action, as Minor received $7 million in that action as a result of the claim that the SLPCV caused her brain injury.

While there may be more than one cause of an injury, that cannot reconcile the inconsistent positions here. Minor's claims in this action were not consistent with a claim that her injuries were caused by both Defendants' conduct and by the Ohio SLPCV. None of Minor's expert reports in this action claimed that delay and TTTS were a contributing cause of Minor's brain damage in addition to or in conjunction with damage to the placenta from the SLPCV. None of the experts in this action opined that delay causes an

increased difficulty or risk of errors or harm to healthy tissue in performing SLPCV. Moreover, Minor's experts in this action specifically based their opinions that the delay in treating the TTTS was a cause of Minor's injuries on the conclusion that the brain damage was caused by hypoxia and the absence of another source of hypoxia and on the opinion that the SLPCV "was completed uneventfully." Rotenberg Expert Report at 2; Yohay Expert Report at 2-3.

Appellant argues that judicial estoppel cannot apply (1) because a settlement, rather than a determination by a court or jury, allegedly cannot satisfy the element of successful maintenance of the inconsistent position; (2) because expert testimony and closing arguments at trial allegedly are not a basis for judicial estoppel; and (3) because the plaintiffs in the Ohio action and this action were allegedly not the same. None of these arguments is meritorious.

With respect to the first of these arguments, the law is presently unclear whether successful maintenance of the prior position is a mandatory element of judicial estoppel or only a factor that favors application of judicial estoppel. In **Adoption of S.A.J.**, the Pennsylvania Supreme Court noted that "[w]hether successful maintenance of the prior inconsistent position of litigant is strictly necessary to implicate judicial estoppel in every case, or whether success should instead be treated as a factor favoring the doctrine's application, is the subject of some uncertainty" and did not decide the issue

because successful maintenance was shown. 838 A.2d at 620-21 n.3. **See also Yoder v. McCarthy Construction, Inc.**, 291 A.3d 1, 15-16 n.19 (Pa. Super. 2023) (noting that this question remains open).

Assuming that successful maintenance is an essential element of judicial estoppel, however, it is satisfied here. Judicial estoppel requires only that the party successfully obtained a benefit by assertion of the position that she now seeks to dispute and does not require that the issue have been actually litigated to conclusion or determined by a court or other decision maker on the merits. **Adoption of S.A.J.**, 838 A.2d at 623 & n.4; **Grabowski**, 230 A.3d at 472. **See also Black**, 995 A.2d at 876, 878-79 (defendant was judicially estopped from claiming workers' compensation immunity where it obtained dismissal of the plaintiff's claim for workers' compensation benefits by a stipulation that another company was the employer); **Widener**, 726 A.2d at 1062 (beneficiary's acceptance of bequest from one estate that it received based on factual predicate barred it from contesting that fact in second estate). In **Adoption of S.A.J.**, the Supreme Court specifically held that judicial estoppel does **not** require an adjudication and ruled that a party was judicially estopped from claiming paternity where he had obtained the benefit of not paying child support from his earlier denial of paternity by causing the child's mother to cease pursuing a child support action. 838 A.2d at 618, 622-23 & n.4. Contrary to Appellant's mischaracterization, there was no ruling by a decision maker on the child support in **Adoption of S.A.J.**; rather, the

proceedings were terminated by the opposing party's withdrawal of the child support complaint and a dismissal for lack of activity. *Id.* at 618.

A settlement that results in a payment to the plaintiff can constitute successful maintenance of a prior litigation position that supports judicial estoppel. *Yoder*, 291 A.3d at 16-17; *Grabowski*, 230 A.3d at 473-74; *Ligon v. Middletown Area School District*, 584 A.2d 376, 379-80 (Pa. Cmwlth. 1990). In *Yoder* and *Grabowski*, this Court held that plaintiffs who obtained workers' compensation benefits through a settlement, a compromise and release agreement that was approved by a workers' compensation judge, were judicially estopped from disputing their employment status. *Yoder*, 291 A.3d at 16-17; *Grabowski*, 230 A.3d at 473-74. In *Ligon*, the Commonwealth Court held that a plaintiff was barred by judicial estoppel from asserting that a defendant with whom he had entered into a settlement at trial was immune from suit. 584 A.2d at 379-80. Here, Minor received a $7 million settlement that was approved by a probate court as a result of the assertions in the Ohio action that Dr. Crombleholme's SLPCV caused her brain injuries.

Appellant argues that *Associated Hospital Service of Philadelphia v. Pustilnik*, 439 A.2d 1149 (Pa. 1981); *Marazas v. W.C.A.B. (Vitas Healthcare Corp.)*, 97 A.3d 854 (Pa. Cmwlth. 2014); and *Philadelphia Suburban Water Co. v. Pennsylvania Public Utility Commission*, 808 A.2d 1044 (Pa. Cmwlth. 2002) (*en banc*), bar judicial estoppel based on a settlement. We do not agree.

In **Pustilnik**, the Pennsylvania Supreme Court held only that a settlement did not constitute successful maintenance of a claim as to the amount of a subrogee's claim and therefore did not estop the settling plaintiff from disputing the amount of the subrogee's claim, 439 A.2d at 1151, not that a settlement can never constitute successful maintenance of a position. Here, in contrast to **Pustilnik**, the issue on which Minor was estopped was the cause of her injuries, not the amount of her damages, and receiving $7 million is clearly successful maintenance of the claim that Dr. Crombleholme's SLPCV caused those injuries. Even if the settlement is consistent with there being more than one cause of Minor's brain damage or with the contention that some damage occurred before the SLPCV because the settlement was not for the full damages claimed, the settlement is irreconcilably inconsistent with the claim on which this action was based that the SLPCV did not cause Minor's brain damage.

The language in **Marazas** and **Philadelphia Suburban Water Co.** that settlement of a claim does not constitute successful maintenance of the prior position, **Marazas**, 97 A.3d at 860; **Philadelphia Suburban Water Co.**, 808 A.2d at 1161, is *dicta*. Neither **Marazas** nor **Philadelphia Suburban Water Co.** involved a settlement. **Marazas** rejected judicial estoppel on the ground that the opposing party's inducing the plaintiff to drop a claim was insufficient to support judicial estoppel. 97 A.3d at 860-61. That ruling is inconsistent with the Supreme Court's decision in **Adoption of S.A.J.** and is therefore not

good law.[2]  In **Philadelphia Suburban Water Co.**, judicial estoppel did not apply because the subject matter of the two proceedings was different.  808 A.2d at 1161-62.

Appellant's second argument fails for two reasons.  First, the contention that expert testimony and closing arguments are not sufficient to support judicial estoppel is incorrect.  The purpose of judicial estoppel is to prevent abuse of the judicial process by taking inconsistent positions before courts.  **Adoption of S.A.J.**, 838 A.2d at 621; **Sunbeam Corp.**, 781 A.2d at 1192; **Grabowski**, 230 A.3d at 472.  Such an abuse can occur by presenting sworn expert testimony in court in support of a position or making factual arguments in court.

While there are statements in Commonwealth Court decisions that estoppel requires verified or sworn statements, **Nagle v. TrueBlue, Inc.**, 148 A.3d 946, 954 (Pa. Cmwlth. 2016); **Marazas**, 97 A.3d at 860, those decisions are not binding on this Court.  **Riverview Carpet & Flooring, Inc. v. Presbyterian SeniorCare**, 299 A.3d 937, 977 n.29 (Pa. Super. 2023); **Beaston v. Ebersole**, 986 A.2d 876, 881 (Pa. Super. 2009) (*en banc*). Because the Commonwealth Court's statements appear to confuse the requirements for judicial estoppel with the requirements for judicial admissions, we do not find those decisions persuasive.  The cases concerning

---

[2] As discussed below, decisions of the Commonwealth Court are not binding on this Court.

expert testimony that Appellant cites, ***Millcreek Township School District v. Erie County Board of Assessment Appeals***, 140 A.3d 737 (Pa. Cmwlth. 2016), and ***Kirk v. Raymark Industries, Inc.***, 61 F.3d 147 (3d Cir. 1995), address the issue of whether statements by experts are admissible as admissions of the party that retained them or other exceptions to the hearsay rule and do not involve judicial estoppel. The authority that Appellant cites concerning closing arguments address whether arguments of counsel are evidence or judicial admissions, not whether closing arguments can support judicial estoppel.

Our conclusion that the expert testimony and argument presented at trial can constitute a basis for judicial estoppel is supported by a decision from Illinois involving a situation very similar to this case, which we find persuasive. In ***Smeilis v. Lipkis***, 967 N.E.2d 892 (Ill. App. 2012), the court specifically rejected the claim that judicial estoppel cannot be based on expert testimony and found judicial estoppel where the plaintiffs obtained a substantial settlement based on expert testimony that was inconsistent with their later position. In ***Smeilis***, the plaintiffs, in the first of two actions that they filed for the same injury, submitted an expert opinion that the hospital that had initially treated the patient was negligent in failing to diagnose the patient and perform immediate surgery, that the patient would not have suffered most of her neurological damage if the hospital performed the surgery while she was under its care, and that surgery performed when the patient first came under

a later physician's care would not have altered the severity of the patient's neurological damage. *Id.* at 895-97. Following discovery, including the deposition of this expert, plaintiffs settled their claims against the hospital for $3 million. *Id.* at 896-97. The plaintiffs then filed a second suit against the physician who had later treated the patient, basing that action on the opinion of a different expert who opined that the hospital was not negligent and that if surgery had been performed promptly when the patient came under the later physician's care, she would not have suffered as much neurological damage. *Id.* at 897. The court held that these conflicting expert opinions constituted the taking of inconsistent positions, that the $3 million settlement constituted a successful outcome, and that the second action was barred by judicial estoppel. *Id.* at 899-907.

Appellant argues that *Smeilis* is distinguishable and that the inconsistent positions should be excused here because the two actions were separated due to lack of jurisdiction over Dr. Crombleholme in Pennsylvania, rather than a deliberate attempt to litigate the claims separately. That distinction is without merit. The issue here is the asserting of conflicting positions on the cause of Minor's injuries, not the bringing of separate actions. Minor could not have successfully introduced the contradictory testimony in a single trial against the CHOP defendants, the HUP defendants, and the Ohio defendants. Under *Mudano v. Philadelphia Rapid Transit Co.*, 137 A. 104 (Pa. 1927), a plaintiff cannot introduce expert opinions from different medical

experts that irreconcilably conflict with each other, and if such an irreconcilable conflict exists, no verdict can be based on either expert, and the plaintiff's claim based on such expert testimony fails. *Mudano*, 137 A. at 107-08; *Brodowski v. Ryave*, 885 A.2d 1045, 1060-63 (Pa. Super. 2005) (*en banc*).

In any event, even if submitting expert testimony and closing arguments in court were not a sufficient basis for judicial estoppel by itself, Appellant's argument would fail for the second reason that the complaint in the Ohio action would be a basis for estoppel. The complaint in the Ohio action pled that Dr. Crombleholme's SLPCV itself caused Minor's injuries. Ohio Action Complaint ¶¶3, 71-77, 87-95. That position is irreconcilably inconsistent with Minor's position in this case that Dr. Crombleholme's SLPCV "was completed uneventfully." Rotenberg Expert Report at 2; Yohay Expert Report at 2.

Appellant's final argument, that the plaintiffs in the Ohio action and this action are different is also without merit. Both this action and the Ohio action were brought on behalf of Minor and name Minor as the plaintiff. The only difference is that Minor was acting through different guardians in the two cases. The plaintiff in this action is Minor "by and through" a guardian of Minor's estate who was appointed by a Pennsylvania court "for the purpose of protecting the Minor's interest in potential litigation." Complaint at 1-2 & ¶11; Philadelphia County Orphans' Court Order, 8/19/15. The plaintiff in the Ohio action at the time of trial and settlement was Minor "by and through" a

- 17 -

different guardian of Minor's estate who was appointed by an Ohio court with his powers limited to the Ohio action. Ohio Action 9/28/17 Order at 1; Ohio Probate Court 9/18/15 Order and Letters of Guardianship.[3]

The fact that this action was brought by a different guardian for Minor than the guardian who litigated and settled the Ohio action does not make the parties different. Under both Pennsylvania and Ohio law, the minor, not the guardian, is the plaintiff and real party in interest in an action brought on behalf of a minor by a guardian. Pa.R.Civ.P. 2027 (referring to minor as "a party to the action"); Pa.R.Civ.P. 2028 (prescribing form of caption of "A, a Minor, by B, Guardian" in "[a]n action in which a minor is plaintiff"); **Winterhalter v. West Penn Power Co.**, 512 A.2d 1187, 1188 n.1 (Pa. Super. 1986) (although represented by guardians, minor "is the real party to this action"); **Lanzalaco v. Lanzalaco**, 976 N.E.2d 309, 313 (Ohio App. 2012) (where guardian brings suit on behalf of a minor, the minor, not the guardian, is the plaintiff and real party in interest); **Slusher v. Ohio Valley Propane Services**, 896 N.E.2d 715, 721 (Ohio App. 2008) (same). The language of Pa.R.Civ.P. 2026 defining "guardian" as "the party representing the interest of a minor party in any action" does not suggest that the guardian,

_____

[3] Minor is not a resident of either Pennsylvania or Ohio; rather, she is a North Carolina resident. Complaint ¶12. The plaintiff in the 2011 action and the original plaintiff in the Ohio action before the Ohio guardian was appointed were identical; both actions were brought by Mother on behalf of Minor. 2011 Action Amended Complaint at 1 & ¶12; Ohio Action Complaint at 1 & ¶5.

rather than the minor, is the plaintiff or real party in interest. Rather, the use of the word "party" in Rule 2026 with respect to the guardian merely designates the person acting on behalf of the minor and refers to the minor as the "minor party."

Appellant's argument concerning guardianship of a party's estate being distinct from guardianship of the person is irrelevant. Both guardians here were guardians of the estate fulfilling the same function on behalf of Minor of bringing and prosecuting litigation on Minor's behalf. Indeed, Appellant's attempt to characterize the plaintiffs in the two actions as different appears to be the very type of gamesmanship that judicial estoppel is designed to prevent, given that the same counsel represented Minor in both actions.

Because the record shows that Minor's claims in the Ohio action were irreconcilably inconsistent with her claims for the same injuries in this action and she recovered a settlement of $7 million based on her claims in the Ohio action, the trial court did not err in dismissing this action based on judicial estoppel.[4] Accordingly, we affirm the order of the trial court.

Order affirmed.

---

[4] We therefore need not and do not address the alternative grounds for affirmance argued by the CHOP defendants and HUP defendants.

- 19 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/25/2024